WENTERN AND ATLANTIC RAILROAD COMPANY, plaintiff in error, *vs.* LUCIEN J. BISHOP, defendant in error.

1. When an employee of a railroad company, by special written contract, at the time he was employed, and in consideration thereof, agreed " to take upon himself all risks connected with or incident to his position on the road, and that he would in no case hold the company liable for any damage he might sustain by accidents or collisions on the trains or road, or which may result from the negligence or carelessness, or misconduct of himself or other employee, or person connected with such road, or in the service of the company:"

*Held,* That such a contract, so far as it does not waive any criminal neglect of the company, or its principal officers, is a legal contract and binding upon the employee.

2. It is the duty of a railroad company to furnish to its employees reasonably safe material and tools for their use in its service; but an employee who is aware of the dangerous character of any particular tool or instrument, and uses it, cannot, if he is damaged, have redress by an action, especially if he had agreed to take upon himself the risk of his business.

3. It was error in this case to charge the jury that if the tool or instrument by means of which the plaintiff was injured, was extraordinarily unsafe, he could recover, unless he knew of its dangerous character, at the time he made the special contract. There was, in the first place, no proof to justify the assumption that the instrument was an extraordinarily dangerous one for the purpose, nor was it necessary, in order to bring the employee within the terms of his special

contract, that his knowledge of the nature of the instrument, should have been obtained at or before the making of the contract ; it is sufficient if, at the time the instrument was used, the employee knew its nature and its dangerous character, if it was dangerous.

4. An employee of a railroad, a part of whose business was to couple cars, who was ten months in the employment of the road in that business, and who, by special contract, had taken upon himself the risks incident to his station cannot, if he be injured, escape the effect of his contract, by showing that a particular kind of link or coupler, regularly in use on the train to which he was attached, and used by him for ten months, was a less safe instrument for the purpose than other kinds of links or couplers.  To make out a case of liability on the company under such a contract, it should appear that there was such gross neglect to furnish proper tools as showed recklessness of human safety, on the part of the company or its principal officers, and a want of knowledge on the part of the employee of the character of the instrument furnished, at the time he was called on to use it.

Railroads.   Contracts.   Negligence.   Before E. M. Dodson, Esq., Judge *pro hac vice.*   Catoosa Superior Court. February Term, 1873.

Bishop brought case against the Western and Atlantic Railroad Company for $20,000 00 damages, alleged to have been sustained from injuries inflicted upon him, when in the discharge of his duties as a train hand, resulting from the defective machinery used upon the road of said defendant for the purpose of coupling cars.

The defendant pleaded the general issue, and specially that the plaintiff was one of its employees, and had previously signed a contract to take all risks incident to his employment, and that it was in consideration of said agreement that he was employed.

The evidence presented the following case :   On the morning of December 6th, 1871, at Dalton, plaintiff was severely injured when attempting to couple a tender to a freight car. He was a train hand in the employment of defendant, and had been acting in this capacity for some ten months previous thereto.   It was his duty to couple cars.   J. R. Anderson, the conductor of the train to which he was attached, was present and directed the particular coupling at which plaintiff was

injured, to be made. The coupling was attempted to be made with a dragbar; not a straight one, but containing a hinge. The tender was higher than the buffer on the car. The dragbar was too short; it caught upon the bottom of the opening of the car buffer, and the pressure tore the buffer loose on one side from the car and pressed it down, the hinge in the dragbar turned, and the tender passed on and mashed the plaintiff against the car. He was very seriously hurt, was unconscious for some minutes; questionable whether he will ever be perfectly sound again.

When the hinge in the dragbar turned over, it permitted the tender to pass on over the buffer of the car. This engine had been used on the road ever since plaintiff was employed. The defendant has now a different kind of coupling on the engine from that which was used when plaintiff was hurt. This coupling is regarded as unsafe and not generally used, though it was attached to other engines on the defendant's road. The plaintiff had been perfectly familiar with this species of machinery from the time he entered the service of the defendant, some ten months before, up to the time of the accident. He was about twenty-nine years of age when in-injured. He was receiving $1 00 per day for his services, though they were worth $1 25. He had been receiving $1 25 per day, but his wages were reduced. He signed the following contract :

"OFFICE WESTERN AND ATLANTIC RAILROAD COMPANY.

"Atlanta, March 4th, 1871.

"This agreement witnesseth, that Lucien J. Bishop has, at his own request, been employed as a train hand on said railroad; and it is understood between the parties, and expressly agreed, that the said Lucien J. Bishop, in consideration that the said Western and Atlantic Railroad Company will hire and pay him the wages stipulated, will take upon himself all risks connected with or incident to his position on the road, and will in no case hold the company liable for any injury or damage he may sustain in his person or otherwise, by what

are called accidents or collisions, on the trains or road, or which may result from the negligence, carelessness or misconduct of himself or another employee or person connected with said road, or in the service of said company.    And it is further agreed, that the company is to pay the said Lucien J. Bishop for no time lost from its service by accident, disability or otherwise, but is to pay at the rate which may from time to time be agreed on, only for the service actually rendered by the said Lucien J. Bishop.    In witness whereof the said Lucien J. Bishop and said company, by Joseph E. Brown, its president, have hereunto set their hands.

(Signed.)      "L. J. BISHOP.
                     " JOSEPH E. BROWN, President
                            " Western and Atlantic Railroad Company.
"Witness :   J. G. W. MILLS."

The jury returned a verdict in favor of the plaintiff for $5,000 00 damages.    The defendant moved for a new trial upon the following grounds, to wit :

1st.  Because the Court erred in charging the jury as follows : "In construing this contract it is the duty of the Court to look to the law of the land and the surrounding circumstances.    It is the duty of railroad companies, imposed upon them by law, to furnish cars, engines, machinery and fixtures, that are reasonably safe and suited for the purposes for which they are used.    The road cannot legally use such machinery as to subject its employees to an unnecessary or extraordinary risk or hazard.    The contract, in this case, does exempt the railroad lessees from all liability for damages which result from the use of machinery, cars, fixtures, etc., that are reasonably safe and only ordinarily hazardous ; but does not apply to any case that might arise from the use of cars, engines, couplings and fixtures that are more than ordinarily unsafe and hazardous.

" If plaintiff was damaged by the use of unsafe cars, engines, couplings, etc., that are more than ordinarily unsafe and dangerous, and he was guilty of no fault or carelessness

on his part, he is entitled to the damages actually sustained by him, if the company knew or might have known, by the use of ordinary care and prudence, that they were more than ordinarily dangerous. If these facts exist, the rights of the parties are not affected by the contract. If plaintiff knew the character of the machinery, cars, etc., that he was to use, at the time he made the contract, and if he knew the engine, tender and coupling that he was to use, at the time he made the contract, then he cannot recover for damage in doing what he agreed to hazard. But it must be shown by proof that he knew the facts at the time he made the contract, and his learning the facts after the contract was made would not deprive him of his right of action."

2d. Because the jury found contrary to that portion of the charge which instructed them, that if plaintiff knew the character of the machinery, cars, etc., that he was to use, at the time he made the contract, and if he knew the engine, tender and coupling that he was to use, at the time he made the contract, then he cannot recover for damages in doing what he agreed to hazard.

3d. Because the Court erred in charging that, " if the evidence satisfies the jury that the injury complained of was caused by the defective character of the machinery or couplings provided by the defendant, and not from any negligence of the plaintiff, and if this machinery was of such character as to be dangerous to life, then the contract that plaintiff signed would not operate to relieve the defendant from liability. Railroad companies are bound to provide reasonably safe machinery, and they have not, in this case, relieved themselves from the consequences of neglect in this respect by the contract in evidence, where such neglect would be dangerous to human life or limb; this contract does not apply to such cases. The legal implication is that the employer will adopt suitable instruments and means with which to carry on his business; and where injuries to servants or workmen happen, by reason of improper and defective machinery and appliances used in the prosecution of the work,

the employer is liable; provided he knew or might have known by the exercise of reasonable care that the apparatus was unsafe."

The motion was overruled and the defendant excepted upon each of the grounds aforesaid.

B. H. HILL & SON ; JESSE A. GLENN ; J. A. W. JOHN-SON, for plaintiff in error.

W. H. PAYNE ; J. E. SHUMATE, for defendant.

McCAY, Judge.

1. We know of no law which limits the right of employer and employee to contract for themselves as to the relative rights and duties of each to the other, provided the contract be not forbidden by positive law, or be contrary to public policy. They are both free citizens. Labor is property, and the laborer has, and ought to have, the same right to contract in reference to it as other freemen have in reference to their property. Generally, the duties cast by law upon employer and employee are only implications of law, in the absence of stipulations by the parties. If one enter into the employment of another, and there be no stipulations as to wages, hours of labor, industry, etc., the law implies an obligation upon the employer to pay reasonable or customary wages, and upon the employee reasonable industry, and upon both reasonable hours of labor. It also implies various other duties and obligations; but, obviously, these are all only implications, in the absence of any agreement between the parties, and it would be a dangerous interference with private rights to undertake to fix by law the terms upon which employer and employee shall contract. For myself, I do not hesitate to say that I know of no right more precious, and one which laboring men ought to guard with more vigilance, than the right to fix by contract the terms upon which their labor shall be engaged. It looks very specious to say that the law will protect them from the consequences of their own folly, and make a contract for them

wiser and better than their own.   But they should remember that the same law-giver which claims to make a contract for them upon one point, may claim to do so upon others, and thus, step by step, they cease to be free men.   We do not say that employer and employee may make *any* contract: we simply insist that they stand on the same footing as other people. No man may contract contrary to law, or contrary to public policy or good morals, and this is just as true of merchants, lawyers and doctors—of buyers and sellers, and bailors and bailees, as of employers and employees.   Will it for a moment be insisted that one who borrows a horse may not stipulate that he shall only exercise the care cast by law upon one who hires a horse?   May not a warehouseman stipulate that he will take extraordinary care when the law, in the absence of such a stipulation, would cast upon him only ordinary care? May he not even stipulate that all the risk shall be upon the bailor?   *"Modus et conventio vincunt legem,"* is a very ancient maxim of the law, and Mr. Brown, in his Legal Maxims, says it may be regarded as the most elementary principle of law in regard to contracts.   He translates it thus : " The form of agreement and the convention of parties overrule the law :" Brown's Legal Maxims, 690.   And our Code, (1873) section 10, whilst it provides that laws made for the preservation of order and good morals cannot be done away with or abrogated by any agreement, yet it also declares that "a person may waive or renounce what the law has established in his favor, when he does not thereby injure others, or affect the public interest."   So far as I know, this ancient rule is applicable to all the private relations in which men may place themselves towards each other.   A *common carrier* is not strictly a private person.   He undertakes to deal with the public, and the law considers the rules applicable to him as rules affecting the public interest.   And it is upon this ground that the cases go which, while they recognize the right of a carrier to limit his liability, so far as he is an insurer, at the same time deny his right, even by special contract, to stipulate that he shall not be liable for negligence of himself or servants.

In the case of Railroad Company *vs.* Lockwood, 17 Wallace, 375, this subject, as to common carriers, is very fully discussed, and the authorities *pro* and *con*, examined and commented upon. The Court decided that a common carrier could not stipulate for non-liability for his own negligence, or the negligence of his servants. But the whole case turns upon the nature of a common carrier's undertaking, that it is a public employment, that care and diligence are the essential duties of his undertaking, that the carrier and his customer do not stand on an equal footing. For these reasons, the contract of a common carrier is an exception to the general rule, " that men must be permitted to make their own agreements, and that it is no concern of the public on what terms an individual chooses to contract." None of this reasoning applies to the case before us. This suit is not against the railroad company as a carrier. The husband of the plaintiff was one of the agents by whom the defendant was exercising the employment of a common carrier. His relation to the company was strictly a private one. His contract of service was a free one. He did not stand in the situation of a traveler, or shipper of goods, " who cannot stop to higgle, or refuse to go on, or to ship his goods." The railroad company has no monopoly of service. It is only one of a million of employers with whom the husband of the plaintiff might have sought employment. He deliberately, and for a consideration, undertook what he knew to be a dangerous service, and contracted that he would not hold the company liable for the negligence of its servants, or even for the negligence of the company itself.

2, 3 and 4. We recognize, however, one limitation to this agreement, and that is the limitation the law puts upon all contracts. No man can stipulate for immunity in case he should do an act that is a crime. No contract is a good one that is in violation of law, that is which the law forbids, or which is against good morals, or contrary to public policy: Code of 1873, sections 2749, 2750. Nothing in this contract can, therefore, protect the company when the negligence which

has caused the damage is a crime, when it comes within that kind of negligence, which is called, in section 4291 of the Code (1873,) criminal negligence, recklessness of human safety and human life. That sort of negligence is forbidden by law and punishable by law as penal. It is contrary to good morals and to public policy as declared by law. As the evidence in this case entirely fails to make a case of criminal negligence on the part of the railroad company or its agents, we think the verdict is wrong. It may be that the link used by the railroad is not as good a link as some others, and were this a question between a passenger and the road, the fact that the tool is not of the most approved character, would be of great importance. But to enable an employee to recover without such a contract as this he must be without fault. Is a man without fault who uses a dangerous and unsafe tool, knowing it to be so? Can a man claim that he has been damaged by the fault of other employees who have furnished an unsafe tool, when he has for months used that tool, knows its unsafeness, and still runs the risk? An employee is not without fault, that is, he is a contributor to his own hurt, if, however negligent others may be, knowing that negligence, seeing the danger, he still chooses to expose himself to the danger. A car coupler is, as we suppose, employed in a dangerous business; he knows it, and if he undertakes to couple a car, with full knowledge that there is extra danger arising from the negligence of somebody else, he is not without fault. It seems to us absurd to say that a man shall use a tool daily for ten months in his own special employment, and then claim that he is hurt without fault of his own, and by the negligence of others, in consequence of the unfitness of that tool for the purpose. We are ready to hold railroad companies to the duties the law casts upon them. But juries should remember that before the law, the rich and the poor, the strong and the weak, have equal rights.

Judgment reversed.