Owen, C. J.
Is it competent for a railway company to
stipulate with its brakemen, at the time, and as part of their contract of employment, that the company shall not be liable for the negligent acts of its conductors ?
Western, etc., R. R. Co. v. Bishop, 50 Ga. 465, is cited, with other decisions of the same court approving and following it, in support of the affirmative of this proposition. In that case it was held that such a contract, so far as it does not waive any criminal neglect of the company, or its principal officers, is a legal contract and binding upon the employe. But McCay, J., speaking for the court, says r “ We do not say that the employer and employe may make any contract; we simply insist that they stand on the same footing as other people. No man may contract contrary to law, or contrary to public policy or good morals, and this is just as true of merchants, lawyers, and doctors, of buyers and sellers, and bailors and bailees, as of employers and employes.” This invites us to inquire whether and to what extent the contract we are dealing with is affected by considerations of public policy. It is maintained on behalf of the company that “ a rule absolving the company from lia *477 bility to the brakemen for negligence of the conductor, may operate to constitute the brakemen a sort of police; may nduee them to be more watchful, and report to their superiors the delinquencies of the conductor. And if they are unwilling to do this, they, and not the company, should suffer the consequences. A rule of this kind is calculated, also, to better protect the public against injuries to merchandise in course of transportation, by promoting greater diligence and watchfulness on the part of the brakemen employed upon the trains.”
Also that “ a stipulation which would place additional responsibility upon the employe, and require for his own protection, a close observance of the rules of the company, and a strict watch upon the conduct of his immediate superior, would tend to promote the safety of passengers and merchandise in transit.”
If this view is tenable, it follows that public policy is concerned in and subserved by such a contract as is here sought to be enforced. As brakeman on the train, Spangler was subject to the orders and control of the conductor.
In Little Miami Railroad Co. v. Stevens, 20 Ohio, 415, it was first held, though by a divided court, that a railroad company is liable to an employe for an injury received through the negligence of another employe under whose control he is placed.
This principle was again considered in Cleveland, C. & C. R. Co. v. Keary, 3 Ohio St. 202, and was applied by a unanimous court to a case like the one at bar, and the railroad company was held liable to a brakeman for an injury resulting to him from the carelessness of a conductor under whose control he had been plaged by the company.
In the course of an able and exhaustive opinion, Ranney, J., says: “ The servants employed to execute can not recover for injuries arising from a failure in that part of the business committed to them, because it is their failure, and not that of their employer; and although it should happen from the negligence of but one of them, yet each one entered the common service with a knowledge that others *478 must be engaged, and they were jointly bound to perform what was jointly intrusted to them, and public policy may be concerned in their keeping a supervision over each other for the purpose. But how this can be made to extend to the conductor, over whose acts they have no supervision Or control, and are not presumed to be possessed of the requisite intelligence for the purpose, we are wholly unable to see; and equally so, how the safety of travelers is likely to be jeopardized by adding to the reponsibility of the conductor for his carelessness, that of the company that places him in power. ... It is the duty of the servants to obey the orders of the superior thus placed over them, and to perform as he shall direct. . . . But they can not be made to bear losses arising from carelessness in conducting the train, over which their employer gave them no power or control, either separately or collectively, until we are prepared to say that justice and public policy require the consequences of duty omitted by one party to be visited upon the other, although stripped of all power to prevent such consequences.”
A careful examination of this case and of Little Miami R. Co. v. Stevens, supra, which it approves and follows, will make it apparent that the liability of railroad companies for injuries to their servants caused by the carelessness of those who are superior in authority and control over them, is placed chiefly upon considerations of public policy.
The doctrine established by these cases has remained unquestioned by this court for more than thirty years. It furnishes a conclusive answer to the contention of the company that the stipulation which it seeks to enforce would bettor protect the public by promoting greater diligence on the part of brakemen and the consequent safety of passengers and merchandise in transit.
We are thus relieved of all discussion of the relation which the liability of railroad companies for injuries to their servants caused by the negligence .of their superiors in authority sustains to the policy of the state. It is the firmly established policy of our law that such liability *479 should attach. It follows that even Western, etc., R. R. Co. v. Bishop, supra, which is the strongest authority cited by the company in support of its position, fails to support the view contended for. As -we have seen, that case expressly declares that contracts contravening public policy will not be enforced. The policy of our law being well settled, it only remains for us to inquire whether railroad companies may ignore or contravene that policy by private compact with their employes, stipulating that they shall not be held to a liability for the negligence of their servants which public policy demands should attach to them. The answer is obvious. Such liability is not created for the protection of the employes simply, but has its reason and foundation in a public necessity and policy which should not be asked to yield or surrender to mere private interests and agreements. The trial court was right in refusing the instruction requested.

Judgment affirmed.