SCHNIBBE *v.* THE CENTRAL RAILROAD AND BANKING CO.

The plaintiff having been injured by the falling upon his foot of an iron frame while he was engaged with other servants of the defendant in moving it upon a truck, but there being shown no negligence of the defendant or its servants, and plaintiff not having been unaware of the circumstances which he alleges as the cause of the injury, but having continued in the service of the company without objection, the grant of a nonsuit in the action brought by him for the injury was proper.

June 2, 1890.

Nonsuit. Negligence. Master and servant. Before Judge HARDEN. City court of Savannah. November term, 1889.

Action for damages by Schnibbe against the railroad company, his declaration alleging that on July 18, 1889, he was in defendant's employment as a laborer, and with three others of its servants was directed by its foreman, whose orders he was bound to obey, to carry from its machine-shop to its blacksmith-shop a heavy iron frame, which was placed on an ordinary truck, and while the same was being pushed into the blacksmith-shop, the wheel of the truck struck an obstruction, causing the frame to fall from the truck upon the plaintiff's foot, mashing and cutting off his great toe and three small toes; that he had been in defendant's service since November, 1882, and was always careful and diligent, and his injury was due to no fault on his part, as he was free from all blame; but that he was damaged by the negligence of defendant, in that (1) the three men assigned to this work with plaintiff were not competent and sufficient for the labor required, defendant being bound to furnish a sufficient number of competent and

skilled men to perform the work, and failing to do so; (2) the ordinary cotton truck was not safe and proper for the labor required, defendant being bound to furnish reasonably safe and proper machinery, appliances, etc. for the work, but failing to do so; and (3) the premises were badly constructed, out of repair, and so deficient in light that the obstruction, a piece of iron, which had been negligently left by defendant's servants in the narrow passage through which the frame was being carried, could not be seen, and it struck the wheel of the truck, throwing the frame on plaintiff, who was ignorant of the danger, which was or ought to have been known to defendant, it being bound to furnish reasonably safe and proper premises for the work, and failing to do so.

The testimony at the trial tended to show, in brief, as follows: On July 18, 1889, the plaintiff was told by another laborer like himself that the foreman of the machine shop had said they must move the frame into the blacksmith-shop. The regular foreman of plaintiff's gang was out in the yard, and the laborer who spoke to plaintiff acted as foreman of the gang and would tell them what the foreman of the machine-shop said he wanted done. Plaintiff was a good workman, and had been employed by defendant since November, 1882. The frame weighed about 1,200 pounds. The regular foreman of the plaintiff's gang did not know about the truck in question being used before for that purpose; he would not allow it to be so used until after two other trucks were broken. There formerly was, besides a two-wheel wagon, a larger truck, which was used when they had to move a heavy frame. The one in question was like a common cotton truck, and was not large enough for this purpose; plaintiff had known of it for a long time; it had been used at least twice before for moving this frame, but it was insufficient for the purpose; the frame

v 85-38

on account of its weight was easy to slip or dump off. The frame was longer than the truck and a little broader. In moving it, the truck handles might be got hold of, but with risk of mashing fingers. They had no better truck for this purpose; plaintiff testified that they had no other, and that the frame was placed on it as securely as possible. After the injury, this frame was moved with the two-wheel wagon. The truck was not insufficient if managed right; they had to try to get it as near on a balance as possible. Plaintiff appeared to be careful; the work did not seem to be dangerous. Besides himself, three other men were moving the truck at the time of the injury, Harrison, Thompson and the laborer who received the order from the foreman of the machine-shop. Harrison had been on the gang only two or three days. Thompson's wrist was somewhat weakened from once having been broken, but he did work requiring strength. The foreman of the gang and perhaps others of defendant's servants knew of this weak wrist; plaintiff did not know. Whenever there was anything to be done, they called on each other for help, and in that way they got together around this frame; plaintiff and Thompson were pulling, the other two pushing the truck. It was common labor, not requiring skill. Four men were insufficient to move the frame with the truck, but they had previously done so. Plaintiff did not ask for more help; they would have told him they did not see where it was necessary, as they had moved the frame before. They had to go with a rush ten or fifteen feet up an inclined plane into the blacksmith-shop, through a passage four or five feet wide. The floor of the shop was concrete, uneven and worn with holes. Imbedded in it near the anvil was a piece of iron used to throw other pieces of iron on. Plaintiff had never noticed it, though he had been through the shop enough to be familiar with it. The

piece of iron was not easy to see, being in a shadow. The truck wheel struck it, tilted the truck and threw the frame off, mashing plaintiff's foot and rendering necessary the amputation of his great toe and three other toes. He suffered great pain and still suffers; is not able to wear a shoe long. The loss of the toes will probably impair his ability to stand long without pain. He incurred certain specified expenses for physician, nurse, medicine, etc.

On motion, the court granted a nonsuit, and exception was taken.

GARRARD & MELDRIM, CHARLTON & MACKALL and DENMARK, ADAMS & ADAMS, for plaintiff, cited Code, §2083; 77 *Ga.* 82; 80 *Ga.* 809; 13 Am. Rep. 164; 3 *Id.* 509; 69 Am. Dec. 317; Shear. & Red. Neg. 107, note; Beach Con. Neg. 103, 357; McKinney Fel. Ser. 61; Deering Neg. §199; 129 Mass. 268, s. c. 37 Am. Rep. 348.

LAWTON & CUNNINGHAM, for defendant, cited Wood M. & S. §§335, 336, 394, 395, 414; 58 *Ga.* 485; 68 *Ga.* 699; 70 *Ga.* 566; 78 *Ga.* 260; 72 *Ga.* 202; 83 *Ga.* 70, 343, 347; 84 *Ga.* 414; 69 *Ga.* 347; 73 *Ga.* 718; 2 Thomp. Neg. 971, 995.

BLANDFORD, Justice.

The court below granted a nonsuit, and under the facts in the record we think the court was right. No negligence on the part of the railroad company was shown by the plaintiff's testimony. The work in which the plaintiff was engaged at the time he was hurt was an ordinary laborer's work; and he had been employed by the company for several years and knew all about the work, and it is to be presumed that he took the risk of any danger incident thereto. He complains that there were not sufficient men employed in the work he was engaged in to perform it safely and securely; but he knew this before he commenced his work, and yet

made no complaint to those in authority. Another complaint is that the truck, which was an ordinary cotton truck, was insufficient for the purpose of performing the work safely; and yet he showed by his testimony that he was aware of this defect and made no complaint in reference thereto. He alleges that while the truck was being pushed into the defendant's blacksmith-shop, the wheel struck an obstruction, thereby causing an iron frame which was on the truck to fall off and on to the plaintiff's foot, which was badly mashed; yet he did not show by any testimony he introduced wherein there was any negligence on the part of the defendant or any co-employee of his. This seems to be one of those casualties which arise in every business employment, and for which no one seems to be to blame.

*Judgment affirmed.*