Nelson *v.* The Central Railroad and Banking Co.

No negligence on the part of the company being alleged in the declaration except that " the engine, by reason of the carelessness and negligence of the defendant, struck against the freight-car with violence so great, unnecessary and unusual as to cause the draw-bar to hurl the coupling-pin from its place, causing it to strike against the left side of the head of your petitioner," and the evidence of the plaintiff himself showing that there was no negligence in handling the engine, and that the real cause of the injury was that the brake was not in a proper condition for safe use, and that the plaintiff knew of the defect when he exposed himself to the danger, the court did not err in granting a nonsuit.

January 11, 1892.          *Judgment affirmed.*

Negligence. Railroads. · Nonsuit. Before Judge Harden. City court of Savannah. May term, 1891.

Nelson sued the railroad company for damages, alleging that on the 26th of January, 1891, without fault on his part, and while in the performance of his duty as

v 88-15

switchman on defendant's engine, and while standing on the foot-board of the engine holding in his left hand the draw-bar for the purpose of causing it to enter the bumper of the freight-car which he was seeking to couple, and while leaning forward for the purpose of reaching the coupling-pin that was resting in the bumper, the engine, by reason of the carelessness and negligence of the defendant, struck against the freight-car with violence so great, unnecessary and unusual as to cause the draw-bar to hurl the coupling-pin from its place, causing it to strike the left side of his head, throwing him to the ground and injuring him. Upon the conclusion of the testimony on his behalf, the defendant moved for a nonsuit on the ground that the evidence showed no negligence on its part and did show negligence on his part. The motion was sustained, and the plaintiff excepted. The testimony was, in brief, as follows:

Nelson, plaintiff: On the 26th of January, 1891, I was working for the defendant as follow-switchman; was making a coupling to its cars when I was hurt. When we went to make the coupling I got upon the foot-board of the engine; that was my proper place at that time; I was there in the discharge of my duty. My leader was down about two or three cars, making another coupling. As I got upon the foot-board and had the draw-bar in my hand, the engine came up with a slurge, and the draw-head struck the pin, and it flew up and hit me side the head. The engine struck hard, with more than usual shock. If it had come with its usual force, I would not have been hurt. The coupling-pin is of wrought iron, and is heavy. After it hit me I fell out on the ground. It had been put on position to make the coupling; I did not have to pull it out. After I got on the engine after I was hurt, I asked the engineer if she was working brakes; and he said she was not, that one of the rods had dropped down and one of the shoes

come down, and therefore he was not able to control his engine.

Cross-examination : I had been working for the defendant about three months; was working as a switchman for about a month or twenty-eight days before I was hurt; had been working around that same engine since seven o'clock in the morning.  When the brakes were off the engine, the only way they could stop it quickly was by reversing.  About ten or fifteen minutes before this accident occurred, I helped the engineer to put the brake-bar upon the tender.  The engine was moving forward when I attempted to make the coupling. I guess we were about twenty feet from the car when the engine started to make the coupling.  When it first started it went slowly, and got quicker just after the start as it moved up.  I gave the signals for the first cars.  When I gave him the signal to stop I was about ten to fifteen feet from the car.  I suppose he did the best he could.  I don't know whether I made any coupling between the time the brake-rod broke and the time I attempted to make this coupling.  Ordinarily, in making a coupling the engineer would apply the brake to stop.  When the brakes are in order he would stop right off quickly.  I don't know whether he could stop in ten feet; I don't know exactly.  When they apply the brakes she stops almost instantly.  The draw-bar was about one and a half or two feet long.  You can always stop the engine by reversing the lever.

Redirect : When the rod broke I did not know that it was not possible to use the brakes.  I knew the rod was broken, but I did not know what main part was broken about the engine.  I think that it was a rod we picked up.  There was a rod and there was a shoe attached to it; we put it up between the engine and tender.

Recross : The brakes hadn't been fixed between the

time the brake was . broke and the time I was hurt. When the shoe presses against the wheel it stops the engine. The steam makes the brake press against the wheel and stop the engine. This part that I saw was the part that presses against the wheel. I knew these pieces were broken ; I helped pick them up off the ground right under the driving-wheels. Shutting off the steam, in connection with the brake-shoes, is the only thing I know which stops the engine. The shoe is to press against the wheel. I knew the engine had brakes ; I didn't know they wouldn't work. I knew the shoe pressed against the wheel to stop it. I guess he tried to stop the engine by reversing it when I gave him the signal to stop. I gave it, as I thought, in ample time.

Other testimony tended to show that an engine cannot be controlled so well without the brakes ; that the brake was taken off the engine nearly an hour before the accident, and the plaintiff was standing there while it was being taken down; that after it was taken off they did not attempt to fix it; and that the engineer knew it was out of order and went on and ran the engine without it.

GARRARD & MELDRIM, for plaintiff, cited 89 N. Y. 375 ; 49 N. Y. 535 ; 139 N. Y. 49 ; 98 N. Y. 280 ; 100 N. Y. 462 ; 46 Hun. 557 ; 47 Hun, 278 ; 106 Mass. 282 ; 102 Mass. 572 ; 113 Mass. 396 ; 7 West. 44; 17 Wall. 554 ; 7 H. & M. 937 ; 50 *Ga.* 465 ; 68 *Ga.* 699 ; 70 *Ga.* 566 ; 74 *Ga.* 64.

LAWTON & CUNNINGHAM, for defendant, cited 68 *Ga.* 699 ; 69 *Ga.* 159 ; 70 *Ga.* 566 ; 72 *Ga.* 202 ; 74 *Ga.* 59 ; 78 *Ga.* 260 ; 83 *Ga.* 343 ; 85 *Ga.* 592.