### 3926.  MASSEE & FELTON LUMBER COMPANY *v.* GEORGIA & FLORIDA RAILWAY.

1. It being issuable whether the injury of which the plaintiff complained was due to improper train orders given by the defendant, or to one of the risks assumed by the plaintiff under the provisions of the contract, the court erred in directing a verdict. If the contract were construed to exempt the railway company from the consequences of the negligence of its employees, it would, so far as it would have that

effect, be void, as contrary to the declared public policy of this State. But as the railway company in express terms assumed liability for any loss due to improper train orders given the plaintiff, and there is evidence from which it is to be inferred that the damage in question was due to the negligence of the railway company in this respect, the verdict directed was not demanded.

2. Where a railway company, in a contract with a lumber company, permitting the lumber company to use the railway tracks, reserved the right to issue all orders for the movement of trains upon its tracks, and the contract provided that the lumber company should move its train of cars in obedience to orders issued by the railway company, an order issued by the railway company in pursuance of its right, which may have been a proper order at the time it was issued, became an improper order if, by the exercise of its right to use its own tracks and a failure to notify the lumber company of a change of schedule or of the operation of an extra train, the train of the lumber company, even though the employees of the latter used due diligence, was likely to be endangered. The right to fix schedules, under the contract involved in this case, implied the duty of issuing orders appropriate to the uses to which the tracks were to be subjected.

DECIDED FEBRUARY 4, 1913. REHEARING DENIED MARCH 1, 1913.

Action for damages; from city court of Nashville—Judge Cranford presiding. November 14, 1911.

*Lane & Park, Hendricks & Christian,* for plaintiff.

*W. H. Barrett, J. W. Quincey, J. P. Knight,* for defendant.

RUSSELL, J. The lumber company brought an action to recover damages from the railway company for the destruction of an engine attached to the plaintiff's logging train, which, while operating, under a contract, over the main line of the railway company, was destroyed in a collision with an extra train of the railway company. It was alleged that the collision resulted from the negligence of employees of the railway company. The railway company relied upon a contract which it insists protected it from liability for damages, in that under its provisions the lumber company assumed all the risks of operating its trains over the tracks of the railway company. At the conclusion of the evidence the court directed the jury to find a verdict in favor of the railway company; and the plaintiff assigns error upon the direction of the verdict.

1. The evidence is conflicting as to what was the real cause of the damage. It is plain, however, that the trial judge placed his ruling upon his construction of the contract, and that the order directing the verdict is based upon the proposition that by the terms of the contract the lumber company assumed all risks incident to the operation of its trains over the tracks of the railway company,

and that the railway company is entirely relieved by the contract from the liability which ordinarily attaches to it by law. If the contract is subject to the latter construction it is void, as being contrary to the declared public policy of this State, which nullifies even an attempt on the part of a common carrier to relieve itself, by contract, from the consequences of its own negligence, either in acts of commission, or in the omission of the duties which, in the exercise of due diligence, it should perform. It is true that in *Western & Atlantic Railroad Co.* v. *Bishop,* 50 *Ga.* 465, it was held that an employee might by special contract assume the risk of a master's negligence, and that such a contract was valid; but this decision was apparently at variance with the great weight of authority. Moreover, it was ruled in the same connection that an employee could not waive any criminal neglect of the company or its officers, and that such waiver would be void. To meet the effect of the ruling in that case, and similar rulings in cases following it, which upheld the right of a master to exempt himself, by special contract, from the consequences of his own negligence, the General Assembly, in 1876 (Acts of 1876, p. 111), gave a definition to the term "criminal negligence," as employed by the Supreme Court in that case, which practically nullified that decision and other decisions like it. The statute is codified in the Penal Code of 1910, § 117, as follows: "If any person, employed in any capacity, by any railroad company doing business in this State, shall, in the course of such employment, be guilty of negligence, either by omission of duty or by any act of commission in relation to the matters entrusted to him, or about which he is employed, from which negligence serious bodily injury, but not death, occurs to another, he shall be guilty of criminal negligence, and shall be punished," etc. The act of 1909 (Acts of 1909, p. 160), as embodied in the Civil Code, §§ 2782-3-4-5, is, of course, not directly pertinent, for it relates to contracts as to personal injuries, but it is illustrative of the general public policy of this State at the most recent period in which the legislature has dealt with the subject.

. The argument that this contract was between two private parties, and the public had nothing to do with it, and that freedom of contract should not be abridged, was precisely the argument of the Supreme Court in the case of *Western & Atlantic Railroad Co.* v. *Bishop,* supra, but the legislature, in protecting the shipper, the

passenger, and the employee, has authoritatively declared this to be not in accord with sound public policy. So far as the real situation of the parties in the present case is concerned, the lumber company is perhaps not as much on an equality with the railway company as an employee would be. A servant is not obliged to accept employment from a master, but apparently, from the facts in this record, the lumber company was compelled to contract with the railway company to get logs to its mill at a cost that would enable it to conduct its business at a profit; and while it is not necessary at this time to rule on the precise question, it is very clear to us that, even where a contract exempting from liability for any consequence of negligence is not expressly prohibited, the policy of this State does not favor or encourage such exemptions. We are inclined to hold that unless the contract of exemption from liability is one which has been expressly allowed by legislation, the public has such a right in the public service of the carrier as that any attempt to contract against its own liability for negligence is contrary to public policy and void. Such decisions of our Supreme Court as would seem to indicate a different ruling are undoubtedly sound because (so far as I have been able to examine) it has appeared that the carrier should have been relieved from liability upon the ground that its alleged duty was not dependent upon any consideration, and the service or facility afforded was gratuitous. In *Blitch* v. *Central Ry. Co.*, 122 *Ga.* 711 (50 S. E. 945), in which it was held that the contract exempted the railroad company from liability, it appears that the warehouse which was destroyed was erected by gratuitous permission; and the rulings which have upheld provisions in free passes as to exemption from liability (such as in *Holly* v. *Southern Ry. Co.*, 119 *Ga.* 767, 47 S. E. 188) are sustainable on the same theory. In each of the rulings of the Supreme Court upon this subject the decision was sustainable upon facts which entirely differentiated it from the case at bar.

2. We are not required, however, to pass upon the question as to whether the contract, as a whole or in part, is void, because, even construing the contract to be valid, the evidence discloses that there was an issue of fact which came fairly within the province of one of the stipulations of the contract; and this issue should have been submitted to the jury. In the contract it is stipulated that "said Georgia & Florida Railway shall be liable to said Lumber

Company for loss or damage which may be caused to persons or property engaged in operating logging trains of said Lumber Company over the tracks of the Georgia & Florida Railway, due to improper train orders given the said Lumber Company by the Georgia & Florida Railway for the movement of said logging trains, but the said Lumber Company assumes all other risks of operation on the tracks of the Georgia & Florida Railway, and will hold the Georgia & Florida Railway free and harmless from all loss or damage to persons or property due to washouts, broken rails, burned bridges, obstructions, and the like, as if the said Lumber Company was operating on its own lines." It is apparent, from this provision of the contract, that while the lumber company assumed the risk of all loss and damage due to washouts, broken rails, burned bridges, and like obstructions, the railway company expressly assumed the risk of any injury which might result from improper train orders given by it to the lumber company; and, upon a review of the evidence, it is plain that in the present case a jury might find that the damage to the plaintiff's property was due to improper train orders, within the scope of the contract, reasonably construed. It will not do to say that the railway company was protected from liability by the stipulation in regard to obstructions, and that its extra train should be held to be included within that term of the contract, and its presence, or the presence of any other extra train, moving upon the track, was reasonably to be anticipated. The word "obstructions," as used in the contract, when considered in its connection, can not reasonably imply an obstruction of an entirely different nature from those which are mentioned as comprising a similar class,—washouts, broken rails, burned bridges, and the like. These would appear to include accidental or seemingly providential obstructions upon the track of the railway company, and can not be held to include a moving train, voluntarily set in motion by the defendant and operated over the track which the defendant itself had directed the plaintiff's engine to traverse. And even though it appears in the evidence that the railway company had given the lumber company orders which were, in one sense, proper orders, still orders originally proper immediately became improper when the railway company started an extra train (which might possibly collide with the lumber company's train) without giving the lumber company's train additional and supplementary orders which would prevent such a contingency.

The trains of the lumber company, under the contract, were to be operated by orders given by the railway company. Under this construction of the contract, which we deem to be the only reasonable construction to be placed upon its terms, a jury, and only a jury, could determine the question as to whether the casualty was due to the negligence of the railway company or to the negligence of the lumber company; and it was error, under this construction of the contract, to direct a verdict.　　　　*Judgment reversed.*