## MASSEE & FELTON LUMBER COMPANY *v.* GEORGIA & FLORIDA RAILWAY.

1. A railway company granted trackage facilities to a lumber company. There was a collision between an extra freight-train of the railway company and a logging-train of the lumber company, in which the engineer of the logging-train was injured. He recovered damages of the railway company, and after payment thereof the railway company brought suit against the lumber company for reimbursement. *Held*, that inasmuch as no act of negligence was charged against the lumber company, it was not liable over to the railway company for damages paid to the lumber company's engineer for injuries received in the collision.
2. A contract between a railway company and a lumber company, granting trackage privileges, contained, among other provisions, the following: "The said lumber company shall hold the said railway company free and harmless from all damage or loss to all persons or property of all persons caused by the operations of said trains of said lumber company on track of the said railway company:" *Held*, that this provision, as interpreted by its own words and its context, did not amount to an assumption by the lumber company of liability caused by the negligence of the railway company to persons engaged in the operation of the lumber company's trains.

    FEBRUARY 11, 1915. REHEARING DENIED FEBRUARY 22, 1915.

Complaint. Before Judge Mathews. Bibb superior court. November 21, 1913.

The Georgia & Florida Railway entered into a contract with the Massee & Felton Lumber Company, wherein the railway company agreed to permit the lumber company to use its main line of railroad between Bannockburn and Ray's Mill, stations on the railroad, for the purpose of hauling logs over this stretch of the track.

During the continuance of the contract there was a collision be-
tween a log-train of the lumber company and an extra freight-train
of the railway company, in which the engineer operating the engine
of the lumber company was injured.   The engineer instituted a
suit against the railway company, alleging that, under the con-
tract between the lumber company and the railway company, the
lumber company had trackage rights to operate its log-trains over
the road of the railway company between certain stations.   He
was the engineer in charge of a log-train of the lumber company,
and on the morning of a day named, while running his train
through a cut, on schedule time and at a normal rate of speed, i. e.,
six to seven miles per hour, and exercising due care and caution in
keeping a lookout and otherwise attending to his duties, an extra
freight-train of the railway company, at a rate of speed from twenty
to twenty-five miles per hour, suddenly dashed around the curve
and collided with the train operated by the plaintiff, without giv-
ing him any warning or chance to stop his train, and without stop-
ping the train of the railway company, inflicting serious injuries
upon his person.   It was further alleged that permission for the
lumber company's train to be at the point upon the track where
the collision occurred at this particular time was furnished him
from the trainmaster's office at Bannockburn by way of telegram.
The railway company was alleged to have been negligent, because,
(a) the southbound extra freight-train of the defendant was allowed
to run out of Nashville upon the schedule time of the northbound
log-train operated by petitioner, instead of such train being held at
Nashville to await the arrival of petitioner's train; (b) such train
was running at a high rate of speed, which, in view of the fact that
there was a heavy curve between Nashville and the southern limits
of the trackage territory of the Massee & Felton Lumber Company,
and the defendant knowing that the lumber train was in such ter-
ritory, was an act of gross negligence; (c) the defendant's engineer,
in approaching the curve, failed to give the usual alarm by the
blowing of his engine whistle.   The railway company vouched the
lumber company in as a party defendant.   The railway company
and the engineer agreed upon a settlement.   This settlement was
made with the consent of the Massee & Felton Lumber Company,
under an agreement that the question of ultimate liability under
the contract between the lumber company and the railway company

should not be concluded, or the rights of either party prejudiced, that the Georgia & Florida Railway should have the right to sue the Massee & Felton Lumber Company for the recovery of the amount paid in settlement, to the same extent as though judgment had been rendered against it in the case, and that if the lumber company would have been liable to the railway company in the event a verdict had been rendered, it would be liable to the same extent, and no more, under the terms of the settlement. After the payment by the railway company to the engineer of the amount agreed upon in the settlement, the railway company instituted its action against the lumber company, alleging the foregoing facts, and attaching a copy of their agreement to the petition. This contract contained, among others, the following provisions: "The Lumber Company is to furnish its own cars, engines, equipment, and employees necessary for hauling its logs and empties, at its own expense, and that all of said trains operated by the Lumber Company are to be run only at such times, and under such rules and regulations, as may be from time to time prescribed by the Railway Company and its duly constituted authorities, copies of such rules and regulations to be furnished to the Lumber Company. . . The said Lumber Company shall see that its engineers and conductors engaged in operating trains over the line of said Railway Company have good timekeeping watches, which they shall compare with the time given the conductors and engineers running regular trains on said railroad at and when called upon. The agent at Bannockburn shall furnish daily to the engineers and conductors of the Lumber Company the time which they shall keep by such watches. Lumber Company's engineers and conductors shall keep off the time of all regular and signal trains as laid down on said time-cards. The Lumber Company will see that their conductors and engineers are supplied with time-cards in effect, and the said engineers and conductors shall carry out the instructions of the officials of said Railway Company as to the running of special or extra trains that are not shown upon their regular time-cards; and that they will strictly observe all other orders that the officials of said Railway Company shall issue from time to time, affecting that portion of the track over which the said log-trains may run, or affecting the operation of the said log-trains themselves, provided that the Railway Company shall furnish the Lumber Company with

such time-cards and orders by which its operations are controlled. The said Lumber Company shall hold the said Railway Company free and harmless from all damages or loss that may be caused to the road-bed, engines, cars, or other property of said Railway Company caused by the engines, cars, logs, or material, or by the officers, servants, or employees of the Lumber Company in the exercise of the privileges hereby granted. The said Lumber Company shall hold the said Railway Company free and harmless from all damage or loss to all persons or property of all persons caused by the operations of said trains of said Lumber Company on track of the said Railway Company. . . Said Georgia & Florida Railway shall be liable to said Lumber Company for any loss or damage which may be caused to persons or property engaged in operating log-trains of the said Lumber Company over the tracks of the Georgia & Florida Railway, due to improper train orders given the said Lumber Company by the Georgia & Florida Railway for the movement of said log-trains." It was further alleged that among the rules and regulations prescribed by the railway company and furnished to the lumber company was its time-table number three, which, among other things, prescribed that log-trains, including those of the lumber company, "will be governed by Georgia and Florida rules and special instructions, and will run with their trains under full control at all times, expecting to find tracks occupied by Georgia and Florida extra trains." At the time of his injury the engineer had received a copy of this time-table, and knew of its provisions. Only one train order was given by the railway company, other than the above-stated rule, on the day of the injury, which order was alleged to be a proper and a usual order, and was in substance that this particular engine of the lumber company would work extra that day until eight o'clock p. m., between Bannockburn and Felton. It was further alleged that the recovery in favor of the engineer had been paid by the railway company, and demand had been made upon the lumber company for reimbursement, which demand had been refused.

The lumber company demurred to the railway company's action, on the grounds, that it appeared that the engineer who prevailed in his suit against the railway company was injured by the negligence of the railway company, and that the contract between the lumber company and the railway company did not relieve the rail-

way company from the consequences of its own negligence; that the negligence of the railway company was not one of the risks of operating the logging-trains over the railway tracks which the lumber company assumed under its contract; that the injuries to the engineer were occasioned by improper train orders given him, as the engineer of the log-train, by the railway company; and that under the contract between the railway and lumber companies the former expressly assumed and agreed to be responsible for any loss or damage to persons or property engaged in operating the log-trains of the lumber company over the railway company's tracks, due to improper train orders. The demurrer was overruled, and the defendant excepted.

*Hardeman, Jones, Park & Johnston,* for plaintiff in error.
*William H. Barrett,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The effect of the settlement of the engineer's suit by the railway company, with the consent of the lumber company, is the same as if a verdict had been rendered in favor of the engineer against the railway company. The railway company, having paid the amount of the recovery, seeks in the present action to reimburse itself from the lumber company. Under its contract the railway company assumed all liability for loss or damage that might be caused to persons engaged in operating the log-trains of the lumber company, due to improper train orders given by the railway company to the lumber company for the movements of its log-trains. In order for the railway company to make the lumber company liable over to it for the damages paid to the lumber company's engineer for injuries received in the collision, it must appear that the collision was the result of the lumber company's negligence, or that the lumber company contracted to be liable for all injuries resultant from the operation of the lumber company's cars, caused by the negligence of the railway company. In the engineer's suit his injuries were alleged to have been caused solely by the negligence of the railway company. In the present suit no specific charge of negligence is made either against the lumber company or the engineer in the operation of the log-train. A contractual duty is alleged on the part of the lumber company to operate its trains according to such rules and regulations as may be from time to time prescribed by the railway company. One of the general rules re-

quired engineers of log-trains to run trains under full control at all times, expecting to find the track occupied by the railway company's extra trains. In the engineer's suit it was alleged that he was running his train at the rate of five to six miles per hour, exercising due care and caution in keeping his lookout, and otherwise attending to his duties. In the present suit it is not alleged as matter of fact that a train run as described in the engineer's suit is not run under full control, and we can not say as matter of law that such is the fact. Neither is it alleged that the log-train was operated otherwise than as described in the engineer's suit. Taking together all the allegations of the petition, those relating to the general rule, as well as those relating to the specific order that the track would be clear of extra trains at the time of the collision, and the running by the railway company of an extra freight-train without notice, we are of the opinion that the petition does not charge any negligence to the lumber company which would make it liable over to the railway company for the money paid out to the former's engineer in settlement of his claim for damages. The order of the morning may have been proper at the time it was given; yet, when the railway company subsequently ordered out an extra train without notice to the lumber company, the order became an improper one, and the collision of the two trains may well be attributed to an improper train order. After the morning order was given to the lumber company, advising it that this portion of the railway track would be free of extra trains until the afternoon, it was the duty of the railway company, if it issued a subsequent contrary order, to communicate the same to the lumber company. When the railway company promulgated its order, it was a continuing permission, as long as it was in existence, for the lumber company to operate its trains upon a track free from extra trains of the railway company. If the railway company issued a contrary order, then the original order became improper, for the reason that it still continued in force just as much as if it had been again promulgated after the contrary order by the railway company was issued. Obviously it would have been improper for the railway company, after putting on an extra freight-train, to notify the lumber company that no such train would be run. See *Massee & Felton Lumber Co.* v. *Georgia & Florida Railway,* 12 *Ga. App.* 436 (77 S. E. 366).

2. It is further contended that the provision of the contract that the lumber company shall hold the railway company free and harmless from all damages or loss to persons or property of all persons, caused by the operation of the trains of the lumber company on the track of the railway company, is an exemption from liability for any negligent injury to the employees and property of the lumber company. We do not think that the parties intended by this provision, and especially when considered in connection with other provisions of the contract, that the railway company was contracting against liability for its own negligence. It suggests that both parties were mindful of the rule that a chartered railroad company permitting another company to run trains over its railway, and thus to use its franchise, is liable to respond for any damage occasioned by negligence, whether its own or that of its lessee or licensee. *Central Railroad &c. Co.* v. *Phinazee,* 93 *Ga.* 488 (21 S. E. 66). The parties were contracting that if the lumber company should injure persons or property, whether belonging to it or the general public, the lumber company would alone be responsible for such injury. The plaintiff was not looking for protection against its own acts of negligence, as it was against the negligent acts of the lumber company. This provision of the contract was to save the railway company from liability caused by the operation of the lumber company's trains, and of course no legal liability could occur from the operation of such trains unless the lumber company in their operation was negligent. We therefore reach the conclusion that this provision of the contract was not intended to be construed as an indemnity by the lumber company for liability caused by the negligence of the railway company, but rather a covenant that it would be responsible over to the railway company for the negligent operation of its logging-trains on the latter's track.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*