# CASES

DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

AT THE

## MARCH TERM, 1918

---

### 9162. HEARN *v.* CENTRAL OF GEORGIA RAILWAY CO.

From the plaintiff's petition it appears that the defendant railway company rented to him a portion of its right of way as a pasture for live stock, under a contract containing a provision that "the tenant will save and hold harmless the company, its successors and assigns, from all damage, injury, or liability that may arise from the destruction or injury of any building, improvements, or personal property of any description, by fire, or from any other cause whatever, whether the same should be attributable to the negligence of the employees of said company or not, where such damage, injury, or liability is caused or increased by reason of the use of the premises hereunder." This suit is for injuries to the plaintiff's live stock while in the above-mentioned pasture, alleged to have been caused by negligence on the part of the defendant's employees in the running of its trains. *Held:* The court did not err in dismissing the petition, on general demurrer.
The provision of the contract exempting the railway company from liability for negligence was not void as contrary to public policy.

DECIDED MARCH 12, 1918.

Action for damages; from Bibb superior court—Judge Mathews. August 6, 1917.

Paul Hearn sued the Central of Georgia Railway Company for $680, alleging, that this amount represented the value of his live stock killed at stated times by the running of the defendant's trains through described property which he alleged he had charge of and was using as a pasture for his live stock; that the place where the stock was killed was a straight track for more than a mile; that there was nothing to prevent the defendant's employees in charge of the trains from seeing the cattle on the track, and

1

that due care required them to check the speed of the trains, and, if necessary, to stop the trains in order to prevent striking and killing the stock; and that the defendant was negligent in that it operated its trains through the said property at a great rate of speed, to wit, approximately forty miles an hour, and "made no attempt to check the speed of said trains to prevent striking and killing" his stock. By amendment the plaintiff alleged that at the time of the injuries complained of he was a tenant of the defendant, under a rent contract, a copy of which was attached to his petition, and which contained, among other provisions, the following: "Whereas said tenant desires, with the permission of the company, to occupy a portion of the right of way or land of the company in Bibb county, Georgia, known as 'Barrel Factory' property, at Vineville, for pasturage purposes, at monthly rental of $16.66, and whereas the tenant is not desirous of affecting in any manner the right of the company to the full and undisturbed possession of the premises, nor the interfering in any way with any of the rights of the company relative thereto, and whereas the company has consented to license for the time being the tenant to occupy the premises as aforesaid, now, therefore, in consideration of the premises and license aforesaid, the tenant hereby covenants and agrees with the company, its successors and assigns, as follows: First. That the tenant will save and hold harmless the company, its successors and assigns, from all damage, injury, or liability that may arise from the destruction or injury of any building, improvements, or personal property of any description, by fire, or from any other cause whatever, whether the same should be attributable to the negligence of the employees of said company or not, where such damage, injury, or liability is caused or increased by reason of the use of the premises hereunder."

A general demurrer to the petition was sustained, and the plaintiff excepted.

*Feagin & Hancock,* for plaintiff.

*Jordan & Lane,* for defendant.

HARWELL, J. (After stating the foregoing facts.) The plaintiff contends that the provisions in the lease contract between the railroad company and himself, stipulating "that the tenant will save and hold harmless the company, its successors and assigns, from all damage," etc., whether "attributable to the negligence of

the employees," etc., is an attempt on the part of the railroad company to relieve itself from any liability arising from the negligence of itself and its agents and employees, and is therefore contrary to the public policy of this State and null and void. There can be no doubt that a railroad company, in its character as a quasi-public corporation, can not contract to relieve itself from the diligent performance of those duties to the public which the law imposes on it. The public has an interest in the proper performance of such duties on the part of the railroad company, and any contract attempting to relieve it therefrom is contrary to public policy. Thus, the railroad company is under the duty, as a common carrier, of exercising diligence in transporting goods; and although it may relieve itself from its liability as an insurer of such goods, it is well established that it may not, by special contract, limit or procure release from its liability for negligence in so doing. Civil Code (1910), § 2726; *Ga. R. Co.* v. *Keener,* 93 *Ga.* 808 (21 S. E. 287, 44 Am. St. R. 197); *A. & W. P. R. Co.* v. *Jacobs Pharmacy Co.,* 135 *Ga.* 113 (4) (68 S. E. 1039), and cases cited. Further, the law imposes on the railroad company the duty of exercising extraordinary diligence in the carrying of passengers (Civil Code (1910), § 2714); and it may not by express contract relieve itself from liability arising from a failure to exercise such diligence. "The liability of a carrier of passengers is not that of an insurer, but such carrier is bound by law to extraordinary diligence to protect the lives and persons of its passengers. This duty can not be waived or released, even by an express contract. Being one in which the public has an interest, public policy forbids such a waiver or release." *Central Ry. Co.* v. *Lippman,* 110 *Ga.* 665 (2) (36 S. E. 202, 50 L. R. A. 673); *Charleston &c. Ry. Co.* v. *Thompson,* 13 *Ga. App.* 528 (80 S. E. 1097), same case 234 U. S. 578 (34 Sup. Ct. 964, 58 L. ed. 1476), and cases cited; *Wright* v. *Central Ry. Co.,* 18 *Ga. App.* 290 (89 S. E. 457). The railroad company is permitted to relieve itself from liability for injury caused by its negligence to one riding on a gratuitous pass, however, because in such case the relation of carrier and passenger does not in its full sense exist. *Holly* v. *Southern Railway Co.,* 119 *Ga.* 767 (47 S. E. 188); *Charleston &c. Ry. Co.* v. *Thompson, supra;* see also cases cited immediately above. By express statute in this State, a contract by which a

master attempts to relieve himself from the duties imposed on him by law towards his servant is null and void, as against public policy. Civil Code (1910), § 3132.

Let us consider the contract in the instant case, with a view to determining whether it was an attempt by the railroad company to relieve itself from any duty which the company owed the public, or whether the contract prejudiced any right or interest which by law the public had in the services of the carrier. Before the lease was made the plaintiff had no right to enter upon the defendant's property and right of way, or to allow his cattle to pasture on the same. To allow the plaintiff's cattle to graze on its right of way and to be free to cross its tracks would impose on the defendant a greater liability than it was already under. The railroad company was willing to perform all the duties which it' theretofore owed to the public, but was not willing to impose upon itself this additional burden. It was not compelled to execute such a lease, and we do not think any public interests were violated by the company providing, as a condition to such a lease contract, that it should not assume any greater burden than the law imposed upon it. "The condition exempting the company from liability for damages to the property of the lessee, . . caused by the negligence of the company, relieved the company from no duty it was required by law to perform, but simply provided that it should not assume an additional burden, which it had the option to take or refuse." Hartford Fire Ins. Co. *v.* Chicago &c. R. Co., 70 Fed. 201 (17 C. C. A. 62, 30 L. R. A. 193).

Under the law the company was bound to run its trains with ordinary care, and of course this duty it could not exempt itself from by contract; but before the lease was made it was not bound to anticipate the presence of the plaintiff's cattle on its tracks. Therefore, in making such a lease contract with the plaintiff, it assumed burdens which the law did not impose upon it. By this contract the road virtually agreed that it would still operate its trains, as before, with due regard to the public, but that as to the plaintiff it would not assume the additional obligation of anticipating the presence of his cattle on its tracks by reason of its having given him, by contract, the right to pasture his cattle upon its right of way. Certainly no duty to the public was violated by this stipulation.

This ruling, we believe, is in harmony with the great weight of authority; certainly the principles upon which it is based are universally recognized by the courts of this country. Neither is this ruling in conflict with the decisions of our own courts. In *Blitch* v. *Central of Ga. Ry. Co.*, 112 *Ga.* 711 (50 S. E. 945), the Supreme Court held: "Where, by a written contract, a railroad company gave to the other party to the contract the right to maintain a warehouse on its right of way, the tenant agreeing on his part to 'save and hold harmless the company, its successors and assigns, from all damage, injury, or liability that may arise from the destruction or injury of any building, improvement, or personal property of any description, by fire, or from any other cause whatever, whether the same should be attributable to the negligence of the employees of said company or not, where such damage, injury or liability is caused or increased by reason of the use of the premises hereunder,' the company was not liable to the tenant for the destruction of the warehouse by fire presumably communicated from one of its trains, it being neither alleged nor proved that the communication of the fire to the warehouse was caused by the gross negligence of the company." It may be true, as pointed out by counsel for the plaintiff in error, that in that case there was no consideration moving to the railroad company for such use of its premises by the plaintiff, and that that case may be in that respect differentiated from the case at bar. But by the overwhelming weight of authority in this country "a provision in a lease by a railroad company of a parcel of land for warehouse purposes, which places the risk of fire upon the lessee, who assumes all risk thereof whether caused by the negligence of the lessor or otherwise, is not void as against public policy." Checkley v. Ill. Cen. R. Co., 257 Ill. 491 (100 N. E. 942, 44 L. R. A. (N. S.) 1127, Ann. Cas. 1914A, 1202). For collections of numerous cases from courts of this country in support of this ruling, see notes in the books last cited. An examination of these cases will show, as noted, that "the ground on which the contract is upheld is that the company owes no duty to the public to exercise care with respect to buildings on its right of way, and may exact its own conditions for permission to place them there, and that it is acting not as a carrier, but in a private capacity." As was said by the Supreme Court of Kentucky, in Greenwich Ins. Co. v. L. &

N. R. Co., 112 Ky. 598 (66 S. W. 411, 67 S. W. 16, 56 L. R. A. 477, 479, 99 Am. St. R. 313), passengers are compelled frequently to travel by railroad or not at all, and freight is required to be shipped by that means or not at all; common carriers, by the conditions under which they exist, and to some extent by operation of law, have the practical monopoly of this business; they are not upon an equal footing with customers in the matter of making such contracts, as where they undertake to secure in advance indemnity against the result of their negligence. Such contracts, the court said, are clearly against public policy. But in regard to the erection of a building on the right of way of the railroad in that case the court said: "No such necessity exists to the owner of the building that he should erect it upon the company's right of way, nor is the company compelled under any state of case to permit him to do so. It is under no obligation to extend its liabilities. It certainly could not be expected to voluntarily do so. Therefore the parties, when they come to contract with reference to the location of such a building, are dealing at arm's length, and upon an equal footing." Although the exact point decided in all of the cases cited above is not the same as in this case, the same fundamental principles of public policy which govern them are controlling in this case. Compare also *Ashley* v. *Central of Ga. Ry. Co.,* 7 *Ga. App.* 711 (68 S. E. 56).

Counsel for the plaintiff insist that the ruling of this court in *Massee & Felton Lumber Co.* v. *Ga. & Fla. Ry. Co.,* 12 *Ga. App.* 436 (77 S. E. 366), is conclusive authority for the contention that the contract in the instant case was contrary to public policy. In that case it was held that a contract exempting a railroad company from injuries inflicted by the negligence of its employees upon the employees of a lumber company using its tracks would be void as against public policy; but in the opinion the same distinction is made as to contracts in which the other party contracting is not on equal footing with the railroad. It is there said: "So far as the real situation of the parties in the present case is concerned, the lumber company is perhaps not as much on an equality with the railroad company as an employee would be. A servant is not obliged to accept employment from a master, but apparently, from the facts in this record, the lumber company was compelled to contract with the railway company to get logs to its

mill at a cost that would enable it to conduct its business at a profit . . . We are inclined to hold that unless the contract of exemption from liability is one which has been expressly allowed by legislation, the public has such a right in the public service, of the carrier as that any attempt to contract against its own liability for negligence is contrary to public policy and void." In the instant case the contract was not with shipper, passenger, or employee. No necessity, as in the case of a shipper who must use the railroad, compelled the plaintiff to contract with the railroad company for pasturage of his cattle upon its right of way. The public duty of the railroad company as a carrier was not limited or restricted by the making of this contract.

It must be remembered that "The power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. The authority of the lawmaking power to interfere with the private right of contract has its limits, and the courts should be extremely cautious in exercising the power to supervise private contracts which the lawmaking power has not declared unlawful." *Equitable Loan & Security Co.* v. *Waring,* 117 *Ga.* 599 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177). For the reasons heretofore stated, we hold that the contract in this case is not void as being contrary to public policy.

There was no allegation of wilful and wanton injury to the plaintiff's cattle, and we can not hold that the facts stated in the petition constitute, as the plaintiff insists, wilful and wanton negligence. The trial judge did not err in sustaining the general demurrer to the petition.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*