41379. BATSON-COOK COMPANY for use, etc., et al.
v. GEORGIA MARBLE SETTING COMPANY.

ARGUED JUNE 7, 1965—DECIDED SEPTEMBER 9, 1965.

*Bryan, Carter, Ansley & Smith, W. Colquitt Carter,* for plaintiffs in error.

*Gambrell, Harlan, Russell & Moye, Charles A. Moye, Jr., Harold N. Hill, Jr.,* contra.

FELTON, Chief Judge. "Except in cases prohibited by statute, or where a public duty is owed, as by a common carrier of goods or passengers, a party may by a valid contract relieve himself from liability to the other party for particular injuries or damages and for ordinary negligence; and such an agreement is not void as against public policy. *Hearn v. Central of Georgia R. Co.,* 22 Ga. App. 1, 3-7 (95 SE 368); *Dowman-Dozier Mfg. Co. v. Central of Ga. R. Co.,* 29 Ga. App. 187 (114 SE 815)." *King v. Smith,* 47 Ga. App. 360, 364 (2) (170 SE 546). "Ac-

cording to the great weight of authority the parties may validly bind themselves by contract to indemnify the indemnitee against or relieve from liability on account of his own future .acts of negligence." 175 ALR 8, 25; 27 Am. Jur. 460, Indemnity, § 9, n. 20 (and see Supp.); Am. L. Inst. Restatement of Contracts § 572; *Louisville &c. R. Co. v. Atlantic Co.*, 66 Ga. App. 791, 801 (19 SE2d 364) and cit.

While the validity of such contracts with respect to public policy is apparently generally accepted, most of the cases involving such contracts·deal with the construction of the particular language employed in each individual indemnity agreement, and there is a wide divergence in the cases on the subject in the various jurisdictions. The reasoning in the majority of cases seems to be that the construction allowing indemnification of the indemnitee against his own negligence is not .against public policy *if, and only if,* such an intent is expressed in plain, clear and unequivocal terms. See *Bohannan v. Southern R. Co.*, 97 Ga. App. 849, 850 (104 SE2d 603) and cit.; *Rome Builders Supply v. Rome Kraft Co.*, 104 Ga. App. 488 (3) (122 SE2d 133); 175 ALR 8, 30. "In the overwhelming majority of the cases the result reached by [the courts'] interpretational efforts can be condensed into the simple rule that where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts." 175 ALR 8, 30, citing cases, including *Fisk Tire Co. v. Hood Coach Lines*, 54 Ga. App. 401 (188 SE 57). "In support of this rule it has been stated that general words alone do not necessarily import an intent to hold an indemnitor liable for damages resulting· from the negligence of the indemnitee and that no inference therefrom can establish such intent. The words of the contract will be scrutinized closely to discover whether such an intent is actually revealed in them and every presumption is against such intention. In the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence." 175 ALR 8, 30 et seq. In the case of *Massee & Felton Lmbr. Co. v. Ga. & Fla. R.*,

143 Ga. 173 (84 SE 468), the Supreme Court held that the provision of a contract, that "[t]he said lumber company shall hold the said railway company free and harmless from all damage or loss to all persons or property of all persons caused by the operations of said trains of said lumber company on track of the said railway company," as interpreted by its own words and its context, did not amount to an assumption by the lumber company of liability caused by the negligence of the railway company to persons engaged in the operation of the lumber company's trains. In our opinion, the language used in the above case is even more broad and purportedly all-inclusive than that in the contract in the case at bar, yet the court still held it not to evidence an intent to indemnify against the indemnitee's negligent acts.

In the case of Batson-Cook Co. v. Industrial Steel Erectors, 257 F2d 410 (5th Cir. 1958) (U.S. Dist. Court, N. Dist. Ala.), in which the present plaintiff in error was the party plaintiff, the court construed the identical clause and contract employed in the instant case not to include recovery for losses caused by the general contractor-indemnitee's own negligence. While the above case is not necessarily binding on the courts of this State, it is persuasive inasmuch as the identical plaintiff and clause are involved and insofar as it is consistent with the applicable Georgia law. That case has been subsequently followed, distinguished and questioned. In Moses-Ecco Co. v. Roscoe-Ajax Corp., 320 F2d 685, 688 (1963) (U. S. Ct. of Appeals, D. C.), the court, in reaching an opposite result in construing a similar clause, distinguished the cases by the fact that the clause presently under examination did not contain specific references to claims brought by employees of the subcontractor-indemnitor and, as the court in the Batson-Cook case had pointed out, there were many situations other than negligence of the indemnitee to which the clause might have applied. The court further stated, fn. 2, that, "[t]o the extent that the Batson-Cook case may appear to require the use of special legal terms such as 'fault,' 'negligence' or 'liability,' we decline to follow it," citing the cases of Maiatico v. Hot Shoppes, Inc., 109 U. S. App. D.C. 310, 287 F2d 349 (1961) and General Acc. Fire & Life Assur. Corp,.

Ltd. v. Smith & Oby Co., 272 F2d 581 (6th Cir. 1959) (77 ALR2d 1134), for the proposition that "[n]o particular form or words are needed but the intent to waive negligence must be clear." The court in the Batson-Cook case, supra, p. 413, expressly rejected the method of resolving the matter "by matching this or that case against language which, by the very nature of things, varies as scriveners set out to draft these instruments or businessmen uncritically put their signatures on printed traditional forms." This idea was expressed in the case of Natl. Surety Corp. v. Erskine & Sons, Inc., 188 FSupp. 687, 688 (1960), as follows: "Actually, in applying the general rule of Ohio law to a particular indemnity clause, a court might even reject the specific use of the word 'negligence' in determining the scope of the agreement, for when a court is called upon to ascertain the intention of the parties to an indemnity contract, it must take into consideration not only the language of the contract, but also the situation of the parties and the circumstances surrounding them at the time the contract was made. City of Cleveland v. Baltimore & Ohio R., 6 Cir. 1934, 71 F2d 89. See 28 O.Jur.2d 311. Thus, even though the parties have agreed essentially upon the facts and the law controlling in this case, the clause cannot be construed solely through a comparison of the language here with the language in other situations entirely divorced from the circumstances of the instant case." This rejection of a reliance solely on the "strict construction" rule—requiring precise wording or a particular form—in favor of a construction which takes into consideration the relative status of the parties, the circumstances attending the contract and their object in making the instrument, has been followed by a number of jurisdictions. See Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F2d 256 (1962); 175 ALR 8, 30, n. 10; 52 CJS 574, Indemnity, § 8 (a), n. 24; Ambrose v. Standard Oil Co. of Cal., 214 FSupp. 872 (1963); Schroeder v. Gulf Refining Co., 300 Pa. 405 (7) (150 A 665); New York, New Haven & H. R. Co. v. Walworth Co., 340 Mass. 1 (162 NE2d 789); Emery v. Metzner, 191 Pa. Super. 440 (156 A2d 627). Although a number of the Georgia cases in which the indemnity agreement has been construed to

cover the indemnitee's negligence specifically used the term "negligence" in reference to the indemnitee, we do not find any Georgia cases which make the use of this or any other specific term a prerequisite to the indemnitee's recovery. See *Bohannon v. Southern R. Co.*, supra, p. 854, and cit. In the *Massee & Felton* case, supra, the court arrived at its construction of the clause by considering other provisions of the contract, the parties' knowledge of liability for damages occasioned by negligence in such situations, and the object of the parties in making the contract, in addition to the wording of the particular clause.

In the case at bar there are several circumstances which might legitimately be considered along with the general and unspecific wording of the indemnity clause. First, the contract form was a standard form, copyrighted by the American Institute of Architects and furnished by the contractor. The principles of contract law, that a contract, when ambiguous, is construed most strongly against the party who prepared it, is applicable to indemnity contracts. Southern R. Co. v. Coca-Cola Bottling Co., 145 F2d 304, 307 (4th Cir. 1944). Second, the general contractor occupied a somewhat superior bargaining position to that of the subcontractor, in that the subcontractor, competing with other subcontractors to obtain the job, was forced to either accept the contract as it was written in order to have his bid accepted, or to reject it entirely. "Validity is almost universally denied to contracts exempting from liability for its negligence the party which occupies a superior bargaining position." 175 ALR 8, 18, § 9. "When it comes to the question of measuring the relative bargaining power of the parties no definite rules exist to guide the courts. While never referred to expressly, two factors seem to be outstanding as of primary consequence: the importance which the subject matter of the contract has for the physical or economic wellbeing of the party agreeing to release the other party from liability for the latter's negligence, measured not in terms of individual but of class importance, and the existence and extent of competition among the group to which the party to be exempted by the clause belongs, measured by the amount of free choice the party can actually exercise who is to agree to the

exemption." 175 ALR 8, 16, § 6. This factor was considered in the following cases: Crescent Towing & Salvage Co. v. Dixilyn Drilling Corp., 303 F2d 237, 246; Bisso v. Inland Waterways Corp., 349 U.S. 85, 91 (75 SC 629, 99 LE 911); Jacksonville Terminal Co. v. Railway Express Agency, Inc., supra.

Third, the contract between the general contractor and the subcontractor required that the subcontractor carry the following insurance: "Minimum public liability insurance: $500,000/ $1,000,000.00; Minimum property damage insurance: $300,000/ $500,000.00; Automobile liability insurance: bodily injury: $300,000/$500,000.00; property damage: $300,000.00." All of the above types of insurance are such as ordinarily provide coverage for damages which might be recovered against the subcontractor-indemnitor as a result of his own negligence, rather than that of some other party such as the general contractor. To further strengthen the probability that the contract did not contemplate indemnity against the indemnitee's negligent act, the petition shows that the indemnitee itself carried liability insurance to cover its liability as a result of its own negligence. While this is not conclusive as to the intent of the parties, it at least indicates that the plaintiff-indemnitee was not relying solely, if at all, upon the indemnity agreement with the defendant-subcontractor for indemnification for damages arising out of its own possible future negligent acts.

Our conclusion, then, based upon a consideration of the foregoing principles and authorities, is that the intention to indemnify the plaintiff-indemnitee was not expressed plainly, clearly and unequivocally, in sufficiently specific words, and this fact, together with a consideration of the entire contract, the circumstances of the parties and the nature of their undertaking, as above discussed, compels the decision that no such construction be given the agreement. The court did not err in sustaining the general demurrer to the petition.

*Judgment affirmed. Jordan and Deen, JJ., concur.*