A05A0382. THE SERVICE MERCHANDISE COMPANY
v. HUNTER FAN COMPANY.
(617 SE2d 235)

RUFFIN, Chief Judge.

This appeal involves cross-motions for summary judgment filed by The Service Merchandise Company, Inc. (SM) and Hunter Fan Company (Hunter) on the issue of contractual indemnity for the wrongful death claims asserted against SM by Kimberly Boss. SM filed a motion for summary judgment on its third party complaint, and Hunter filed a motion for partial summary judgment against SM on the issue of contractual indemnity. The trial court denied summary judgment to SM and granted partial summary judgment to Hunter. On appeal, SM contends that the trial court erred in denying its motion for summary judgment. For reasons that follow, we affirm.

In 1993, Hunter and SM adopted a purchase agreement which set the acceptance of the contract's terms at the time of Hunter's shipment of its products to SM. On September 4, 1994, Connie Shirley, a relative of the decedent, purchased a Hunter Air Purifier Model 30300 from SM. Shirley also purchased an extended warranty for the air purifier and provided her name and address to SM for purposes of the warranty. After identifying a potential fire hazard posed by this particular product, Hunter instituted a nationwide voluntary recall in January 1996 for this product. Hunter notified SM about the recall and requested a list of all purchasers of the Air Purifier Model 30300 from SM. It is undisputed that the customer list that SM provided to Hunter failed to include Shirley's name and address and that Hunter did not notify Shirley about the recall.

Unaware of the recall, the Boss family continued to use the air purifier. Meanwhile, Shirley continued to maintain an extended service contract for parts and labor for the Air Purifier Model 30300 through September 3, 2000.[1] On November 12, 2000, ten-year-old Steven Boss perished in a house fire apparently caused by the air purifier.

---

[1] On September 4, 1994, Shirley purchased a one year parts and labor contract from SM.

After her son's death, Boss brought a product liability/wrongful death suit in federal district court against Hunter, the manufacturer of the allegedly defective product. While the federal case against Hunter was pending, Boss, individually and as administratrix of her son's estate, filed a wrongful death suit in November 2002 in superior court against SM, the retailer of the allegedly defective product. The wrongful death suit against SM focused on its alleged failure to warn customers about the defective product. Boss claimed that Hunter notified SM in writing in January 1996 that the "product was dangerous and was being recalled." Boss further claimed that Hunter notified SM "that the Model 30300 air purifier constituted a potential safety hazard and should be removed from inventory." Boss alleged that SM had negligently failed to check its own business records when asked by Hunter to do so and negligently failed to warn its customers of the known dangers of a product of "which it had specific knowledge and information . . . concerning latent dangers that would be unknown to its customers." The lawsuit was later amended to add a claim against SM for punitive damages attributed to SM's "gross negligence, wantonness and entire want of care."

After Boss filed suit against SM, SM filed a third party complaint against Hunter for "indemnity and/or contribution based on both contractual and common law theories" which it claimed applied to the wrongful death suit. SM sought to have the parties' 1998 contract apply to the air purifier, a product purchased in 1994 that had allegedly caused the boy's death in 2000.[2] While the litigation against SM was pending in superior court, Hunter and Boss executed a confidential settlement of the federal lawsuit early in 2003.[3] After settling the case with Boss, Hunter answered SM's third party complaint and counterclaimed against SM for indemnification and contribution for its own costs incurred in the federal case including defending the suit and paying the judgment and costs.

SM moved for summary judgment on its claim for indemnification from Hunter, and Hunter moved for partial summary judgment on that same issue. In denying SM's motion for summary judgment and in granting partial summary judgment to Hunter, the trial court determined that SM was not entitled to recover against Hunter under SM's theory of contractual indemnity. SM appeals.[4]

She apparently renewed the "Extended Service Contract from Service Merchandise" several times with the last agreement providing coverage for September 4, 1999 to September 3, 2000.

[2] The business relationship between Hunter and SM was governed by various purchase agreements. Only the 1993 and the 1998 agreements are in issue here.

[3] According to Boss's brief, the terms of the settlement require Boss to indemnify Hunter for any claims asserted by SM against Hunter.

[4] Hunter's counterclaim against SM remains pending and is not part of this appeal.

1. SM contends that the trial court erred in denying its motion for summary judgment and by granting partial summary judgment to Hunter because the 1998 contract is "the operative contract" and it requires contractual indemnification for the pending allegations of negligence against SM. SM claims that "clear contractual language" requires Hunter to indemnify SM against Boss's "simple negligence claim (but not Plaintiff's gross negligence claims)." SM argues that the "previous generations of the 1998 Contract (1993 or 1995)" were terminated and "cannot have life breathed back into [them]." We disagree.

The controlling issues in this case depend on the interpretation and applicability of certain terms in the 1993 and 1998 purchase agreements. On appeal, this Court considers questions of law de novo, including issues of contract construction.[5] "The construction of a contract is peculiarly well suited for disposition by summary judgment because, in the absence of an ambiguity in terms, it is a question of law for the court."[6] "The cardinal rule of construction is to ascertain the intention of the parties."[7] "The language which the parties have used will be looked to for the purpose of finding that intention, which . . . once ascertained will prevail over all other considerations, in determining the nature of the agreement."[8] In addition, the words of a contract of indemnification must be construed strictly against the indemnitee.[9] "[A]nd every presumption is against such intention [to indemnify]."[10] When an indemnity agreement is ambiguous, such ambiguity must be construed against the drafter; here, SM drafted the agreements.[11] In reviewing a contract of indemnity, "Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language."[12]

With these rules of construction in mind, we examine the purchase agreements executed by Hunter and SM as applied to certain undisputed facts — that Hunter shipped the air purifier at issue to SM and that Shirley purchased that air purifier from SM in September 1994. Plainly, at the time that Shirley bought the air purifier, the

---

[5] See *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002).

[6] *George L. Smith II Ga. World Congress Center Auth. v. Soft Comdex, Inc.*, 250 Ga. App. 461, 462 (550 SE2d 704) (2001).

[7] OCGA § 13-2-3.

[8] *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995).

[9] See *Ga. State Tel. Co. v. Scarboro*, 148 Ga. App. 390, 391 (2) (251 SE2d 309) (1978).

[10] *Batson-Cook Co. v. Ga. Marble Setting Co.*, 112 Ga. App. 226, 230 (144 SE2d 547) (1965).

[11] See *Scarboro Enterprises v. Hirsh*, 119 Ga. App. 866, 870 (2) (169 SE2d 182) (1969).

[12] *Central of Ga. R. Co. v. Lester*, 118 Ga. App. 794, 801 (2) (165 SE2d 587) (1968).

1993 purchase agreement was the only contract in force. Paragraph 1 of the 1993 "Purchase Terms and Conditions-Hardlines-Perpetual" Agreement stated:

> 1. Acceptance. Shipment of all or any part of the products ordered from Vendor "Products" shall constitute an express and binding acceptance by Vendor of all terms and conditions contained in this Agreement.

And, according to Paragraph 11:

> 11. Indemnify and Hold Harmless. Vendor agrees to protect, defend, hold harmless, and indemnify Buyer from and against any and all claims, actions, lawsuits, liabilities, product recalls, losses, royalties, damages, or costs and expenses (including attorneys' fees): . . . (b) arising out of any actual or alleged death of or injury to any person, or damage to any property, or any other damage or loss by whomever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in Products, whether latent or patent, including actual or alleged improper or negligent manufacture, construction or design of Products or the failure of Products to comply with specifications or any express or implied warranties of Vendor. . . .

Under Paragraph 1, the terms and conditions of the 1993 agreement became binding on Hunter only after SM ordered products from Hunter and Hunter shipped all or part of the products so ordered. Paragraph 11 obligated Hunter to indemnify SM for lawsuits and liability arising from the death or injury to any person alleged to result from any defective products that Hunter sold to SM. In other words, Hunter was obligated to indemnify SM in the event of a death resulting from or claimed to be the result of improper manufacturing, construction, or design defects in Hunter's products sold to SM.

Paragraph 14 (e) under "MISCELLANEOUS TERMS" stated:

> This Agreement and subsequent Purchase Orders constitute the full understanding of the parties hereto, and a complete and exclusive statement of the terms of agreement as to the subject matter contained therein. No amendment or modification shall be binding unless hereafter made in writing and signed by the party to be bound.

Thus, unless the 1993 agreement was subsequently amended or modified by express written agreement, Hunter and SM remained

bound by terms in the 1993 agreement. Nothing in the two-page 1993 purchase agreement, however, expressly required Hunter to indemnify SM in the event that the claims, lawsuit, or losses were caused by or were the result of SM's own fault, negligence, or error.

In 1995, Hunter and SM adopted a new purchase agreement that contained the same or substantially the same acceptance and indemnification provisions as the 1993 contract. The terms of the 1995 agreement are not at issue here.

In 1998, Hunter and SM adopted a new contract consisting of three pages and also entitled "Purchase Terms and Conditions-Hardlines-Perpetual" Agreement. Like the 1993 document, the 1998 contract had the same terms of acceptance, meaning that the agreement took effect upon Hunter's shipment of products ordered by SM. However, the 1998 purchase agreement set forth new terms with respect to warranties and representations, buyer information, indemnification, and liability insurance. Specifically, Paragraph 13 of the 1998 agreement allowed SM to disavow any warranty with respect to "BUYER INFORMATION" that SM supplied to Hunter. In the event that SM provided Hunter with "Buyer Information," including the names, addresses and phone numbers of customers who had purchased Hunter's products from SM, under Paragraph 13, SM disavowed any responsibility for the accuracy or completeness of such information. In addition, the 1998 agreement significantly altered the terms of indemnification by adding language concerning fault or negligence on the part of SM. In pertinent part, Paragraph 14 stated the following:

14. INDEMNIFY AND HOLD HARMLESS. Vendor agrees to protect, defend (*at Buyer's election*), hold harmless, and indemnify Buyer from and against any and all claims, actions, lawsuits, liabilities, product recalls, losses, royalties, damages, or costs and expenses (including attorneys' fees): . . . (b) arising out of any actual or alleged death of or injury to any person, or damage to any property, or any other damage or loss by whomever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in Products, whether latent or patent, including actual or alleged improper or negligent manufacture, construction or design of Products or the failure of Products to comply with specifications or any express or implied warranties of Vendor, *and regardless of whether or not the death, injury or loss was or is alleged to have resulted from the fault or negligence of Buyer or anyone for whom Buyer may be responsible*. . . .

(Emphasis supplied to new terms.) In sum, the 1998 agreement

would appear to obligate Hunter to protect and defend (if SM so elected) and to hold harmless and indemnify SM from all losses and claims, including death, regardless of whether that death was entirely or partially attributable to SM's own negligence or fault. SM argues that the 1998 contract "was the only contract in full force and effect between Hunter and Service Merchandise at the time Ms. Boss filed the instant lawsuit in 2002, by virtue of a clause which expressly superseded and replaced all previous contracts between the Parties." Relying upon the new language in Paragraph 14 of the 1998 purchase agreement, SM asserts that Hunter agreed to defend and indemnify SM for all claims "regardless of whether or not the death, injury or loss was or is alleged to have resulted from the fault or negligence of [SM]." In effect, SM claims that the indemnification provisions in the 1998 purchase agreement applied retroactively to Hunter's allegedly defective product, the air purifier purchased by Shirley from SM several years earlier.

In urging this contract construction, SM relies upon part of one sentence in the final unnumbered paragraph of the 1998 agreement that stated:

> The terms of this Agreement shall apply to all Purchase Orders accepted by Vendor after the date hereof, and shall replace and supersede all prior agreements concerning the subject matter of this Agreement. Vendor agrees to the terms and conditions contained herein and on the attached Forms, all of which constitute the entire Agreement between parties.

SM's argument emphasizes the latter part of the sentence stating "and shall replace and supersede all prior agreements concerning the subject matter of this Agreement," while ignoring the first part of the same sentence which stated, *"[t]he terms of this Agreement shall apply to all Purchase Orders accepted by Vendor after the date hereof."* (Emphasis supplied.) However, a contract "should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof."[13] The 1998 agreement plainly and unambiguously contemplated that its terms would apply prospectively and so provided, stating, "shall apply to all Purchase Orders accepted by [Hunter] after the date hereof." The phrase "and shall replace and supersede all prior agreements concerning the subject matter of this Agreement" must be read in its context and in conjunction with the remainder of the sentence. In other words, the

---

[13] (Punctuation omitted.) *Sage Technology v. NationsBank*, 235 Ga. App. 405, 407 (1) (509 SE2d 694) (1998).

terms of the 1998 agreement would apply to future purchase orders placed by SM that Hunter accepted at which point the 1998 terms and conditions would "replace and supersede all prior agreements" concerning such future purchase orders.

Notwithstanding this construction, SM argues that these terms do not preclude retroactive application of the 1998 contract to the air purifier sold in 1994. SM asserts that Boss's claim for negligence "only ripened and matured in 2000, after the 1998 Contract was the only contract in effect between the parties," regardless of whether the alleged negligence derived from SM's pre-1998 conduct. SM maintains that by the time Boss "had a viable claim, the 1998 Contract had invalidated and replaced all preceding generations of the contract." We disagree.

As a matter of law, the scope of the written indemnification provisions must be strictly construed against SM, the indemnitee.[14] Unless the words of a contract explicitly show an agreement to indemnify another party for his own negligence, such an agreement cannot be implied.[15] This is so because:

> [p]ublic policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault. Public policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such indifference. Unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, courts will not interpret such an agreement as a promise to save the indemnitee from his own negligence.[16]

Although SM argues that the 1998 purchase agreement obligated Hunter to indemnify SM for SM's pre-1998 negligence, we find no such express language in the agreement and we will not imply such terms.[17] Because the indemnity provisions in the 1998 contract failed to expressly, plainly, clearly, and unequivocally state that Hunter agreed to indemnify SM as to SM's pre-1998 negligence, Hunter incurred no obligation to indemnify SM for its defense in the claims asserted against SM in Boss's lawsuit.[18] It follows that Hunter is not

---

[14] See *Park Pride Atlanta v. City of Atlanta*, 246 Ga. App. 689, 691 (1) (541 SE2d 687) (2000).

[15] See *Lester*, supra, 118 Ga. App. at 801 (2).

[16] (Citations omitted.) *Park Pride*, supra, 246 Ga. App. at 690 (1).

[17] See *Myers v. Texaco Refining & Marketing*, 205 Ga. App. 292, 295 (2) (422 SE2d 216) (1992); *Batson-Cook Co.*, supra, 112 Ga. App. at 234.

[18] See *Park Pride*, supra, 246 Ga. App. at 691.

obligated to defend and indemnify SM for SM's past conduct.[19] The trial court properly rejected SM's attempt to have the broad exculpatory indemnification language of the 1998 agreement apply retroactively to Hunter's obligations as to the product sold in 1994.[20]

2. SM contends that the trial court erred in denying its motion for summary judgment and by granting partial summary judgment to Hunter because there are no public policy reasons that preclude SM's claim for contractual indemnity for the claims of negligence pending against it. In light of our holding in Division 1, this argument lacks merit.

3. SM contends that the trial court erred in denying its motion for summary judgment and by granting partial summary judgment to Hunter because the 1998 contract contains an insurance clause that independently requires Hunter to defend and indemnify SM, as a matter of law, for all claims asserted by Boss. We disagree.

The 1993 agreement — not the 1998 agreement — was the operative contract. The 1993 contract required Hunter to obtain liability insurance that included SM as a third party. Paragraph 12 of the 1993 agreement stated:

> 12. INSURANCE. Vendor shall carry a liability insurance policy with a Broad Form Vendor Endorsement, with Buyer listed as an additional insured. Product liability coverage shall be on an occurrence basis (not on a "claims made" basis) and shall survive after Products have been sold by Buyer to its customers. The full nature and extent of liability coverage required shall be as determined by Buyer in its sole discretion.

Nothing in Paragraph 12 of the 1993 agreement obligated Hunter to insure against SM's negligence, mistake, or misconduct or against SM's gross negligence or entire want of care. The requirement that Hunter name SM as an additional insured did not create an independent basis that would require Hunter to defend and indemnify SM for SM's own negligence or gross negligence. To find otherwise would effectively negate the public policy that one cannot be indemnified for one's own negligence unless the contracting parties expressly and explicitly agree to such indemnification in writing.[21]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

---

[19] See *Lester*, supra, 118 Ga. App. at 801 (2).
[20] See *Park Pride*, supra, 246 Ga. App. at 690-692 (1).
[21] See id.; *Batson-Cook Co.*, supra, 112 Ga. App. at 234.

DECIDED JULY 11, 2005.

*Carlock, Copeland, Semler & Stair, Wayne D. McGrew III, Kim M. Ruder,* for appellant.

*Finch, McCranie, Brown, Hendrix & Sullivan, Richard W. Hendrix, Casey, Gilson & Leibel, Glenn C. Tornillo,* for appellee.