48462, 48538. UNION CAMP CORPORATION v. LOUISVILLE & NASHVILLE RAILROAD COMPANY et al.; and vice versa.

DEEN, Judge. The events giving rise to this indemnity action are substantially as follows: The defendant Union Camp Corp. was by agreement included in a previously executed contract, regarding the construction and use of a railroad spur sidetrack adjacent to its warehouses. Paragraph 7 (a) stipulated that the industry would permit no obstruction over the sidetrack closer than eight feet six inches from its center line and further assumed "to indemnify and hold harmless Railroad from and against all loss and damage, costs, expenses (including attorney fees), claims, suits and judgments whatsoever arising from or growing out of any injuries, loss or damage caused by or contributed to by the failure of Industry, its employees, agents, or licensees, (i) to comply with the provisions of Article 7 (a) above, or (ii) to keep the right-of-way of said sidetrack free and clear."

Long, an engineer on the plaintiff's train, was moving slowly along the spur track and reached his hand out the window to remove or clear a cloth awning of Union Camp's building which, it appears, was in an open position and accordingly closer than the prescribed limits to the track. A metal hook concealed within its

folds tore the ligaments in his hand, necessitating prolonged treatment. Long made a claim against his employer under the Federal Employers' Liability Act; the railroad notified the defendant as indemnitor under the portion of the contract above set out and tendered it an opportunity to defend; Union Camp disavowed any liability and eventually, after notice, the railroad paid the claim and filed suit to recover the amount of the settlement.

The petition as amended was in four counts. The appeal here is from the overruling of the defendant's motion for summary judgment as to Count 1 (breach of contract as to clearance provisions of the agreement); Count 2 (negligent tort) and Count 4 (indemnity under the above quoted contract provisions, while acknowledging negligence of the railroad within the meaning of the Federal Employers' Liability Act. The cross appeal of the railroad enumerates error on the sustaining of the motion for summary judgment as to Count 3 (the railroad is entitled, as a joint tortfeasor, to contribution). *Held:*

1. Breach of the contract provisions regulating standard clearance distances resulting in an FELA liability by the railroad to its employees falls under the usual indemnity provisions of a spur track agreement such as the one here. *Central of Ga. R. Co. v. Woolfolk Chemical Works, Ltd.,* 122 Ga. App. 789 (178 SE2d 710); 20 ALR2d 711 et seq.

2. The four enumerations of error of the appellant all, in various ways, raise the question whether the railroad can recover against a lessee industry under a spur track agreement where the railroad, after notice of injury to one of its employees who makes an FELA claim against it, may settle the claim without suit or judgment and thereafter recover from the industry on proof (a) that the spur track agreement as to clearance was violated, (b) that such violation caused the injury, and (c) that under the circumstances present an FELA claim based on failure to provide a safe place to work would be justifiable. The defendant cites two cases decided in the 1920's, Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co., 219 P. 9 and Mo. Pac. R. Co. v. Sonken-Galamba Corp., 274 S.W. 930 which stand for the proposition that voluntary payments may not be recovered under the indemnity provisions, and insists that the payments here made were indubitably voluntary, as shown by the facts that the railroad, if negligent in no respect whatever, would have no FELA liability, and that the railroad has admitted this state

of facts to be true *in judicio.* It arrives at the latter conclusion because, in answer to an interrogatory addressed to the railroad asking whether the plaintiff contended its employee was injured as a result of the plaintiff's negligence, it replied: "No. It is the contention of these plaintiffs that they were not negligent, although a jury upon hearing all of the evidence may, of course, determine otherwise." The settlement to Long, the injured employee, was in the amount of $8,000. An affidavit of an attorney was presented on the summary judgment motion giving as his expert opinion that Long, had he been forced to sue the railroad, would have recovered, and that the amount of recovery would have been between $5,000 and $15,000.

In affirming the action of the trial court rejecting the theories on which the motion for summary judgment was based (this is, primarily, that Long, not the railroad, suffered damages; that the payment by the railroad to Long was voluntary and therefore not recoverable; that the plaintiff admitted it was guilty of no negligence and consequently could not be liable, and that the indemnity agreement depended entirely on legal liability) we note that, as the facts appear at this stage, the negligent act which was the cause of Long's injury is chargeable to the appellant, because it placed an awning closer to the center line of the track than allowed by its contract, and because the awning, while it appeared to be made of cloth and therefore harmless, in fact contained a concealed metal hook which was the immediate cause of injury. But to permit this situation on its tracks, would at the very least present a jury question and subject the railroad to grave danger of liability to judgment based on its failure to provide the employee with a safe place to work. The answer of the railroad does not, therefore, mitigate against its right to indemnity, since it might in all common sense contend that the *negligence,* in its primary and active sense, was that of the industry, but that its *liability* was almost a foregone conclusion on a jury trial. We also note that liability under the indemnity provision is not limited to that established by trial and judgment ("claims," "suits," and "judgments" are all included). Further, the industry was notified of the accident, the claim, the circumstances, the intention to settle, and the amount. It at all times denied any responsibility or liability in the matter. "At that time the plaintiff was entitled to proceed in good faith in an effort to accomplish a settlement without assuming the risk of forfeiture of its right to indemnity. By the same token, the

payment of the claim did not of itself conclude the issue of liability. It was for the jury to determine whether the settlement was reasonable, prudent and reached in good faith." Boston & Maine R. v. Howard Hdw. Co., 186 A.2d 184, 190 (a case involving almost the same elements as those obtaining here). See also to the same effect Trustees of New York, New Haven & Hartford R. Co. v. Tileston & Hollingsworth Co., 189 N. E. 2d 522. "Ordinarily, to sustain a claim upon an indemnity contract such as we have here, it is necessary for the indemnitee to prove legal liability to the injured party. [Citations]. However . . . where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage." Chicago R. I. & P. R. Co. v. Dobry Flour Mills, 211 F2d 785, 787. The trial court did not err in denying Counts 1, 2 and 4 of the defendant's motion for summary judgment.

2. The cross appeal of the railroad goes to the action of the trial court in sustaining Count 3 of the complaint, alleging that the plaintiff, as one concurrently negligent with the lessee, is entitled to contribution. This is based on the last clause of paragraph 8 of the indemnity agreement reading: "Industry also agrees to indemnify and hold harmless Railroad for loss, damage or injury (including attorney's fees in case of litigation) from any act or omission of Industry, its agents or employees to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or about said sidetrack; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties, it shall be borne by them equally."

Again, we agree with the trial court, who struck down the contribution count based on uncontradicted evidence that the awning in its open position caused the injury and that in that position it also violated the safety clearance requirements of the spur track agreement. The reasoning in Anthony v. La. & Ark. R. Co., 316 F2d 858 is equally applicable here. In that case it appears that the cause of injury to the railroad employee was a violation of the clearance provisions of the contract by a loading shed belonging to the defendant. As the court analyzed the case, the active negligence involved was that of the industry in the location of the shed; the railroad was guilty of consequential and

passive negligence, caused by this situation, in failing to provide its employee with a safe place to work. On the trial of the issue, it was the industry which took the position that the railroad was guilty of contributory negligence and that therefore its recovery, under a clause similar to that above quoted in the contract here involved, could not be forced to indemnify the railroad more than half the amount of the damages allocable to the injured employee, and that the clauses were inconsistent. The court held (p. 866): "Doubtless the contribution provisions are intended to cover situations not covered by the indemnity provisions, as where the injury is caused by some joint negligent act which is not specifically covered by the contract. For example, if the injury had been caused by an obstruction negligently placed near the tracks but outside the specified track clearances, the contribution provision would likely apply. In any event, if there should be any inconsistency between the indemnity and contribution provisions in paragraph 6 [8], we believe for reasons heretofore stated that paragraph 5 [7] provides complete indemnity in the situation here presented."

Adopting this very reasonable method of reconciling the indemnity and contribution features of the contract where the sole active negligence apparent is a violation of safety clearances specified in the contract, it is obvious that the railroad presented no evidence showing joint and concurrent negligence on the part of itself and industry on any point not specifically covenanted against by industry. The trial will be controlled by the application or nonapplication of paragraph 7.

*Judgments affirmed in cases 48462 and 48538. Bell, C. J., and Quillian, J., concur.*

ARGUED SEPTEMBER 10, 1973 — DECIDED OCTOBER 1, 1973 — REHEARING DENIED OCTOBER 29, 1973.

*Carter, Ansley, Smith & McLendon, H. Sanders Carter, Jr.,* for appellant.

*Neely, Freeman & Hawkins, Albert H. Parnell, Heyman & Sizemore, Benjamin H. Oehlert, III, George H. Myshrall, Jr.,* for appellees.