**SOUTHERN RAILWAY COMPANY,**
**Plaintiff,**

v.

**BRUNSWICK PULP & PAPER COMPANY, Defendant.**

**Civ. A. No. 807.**

United States District Court,
S. D. Georgia,
Dublin Division.

May 22, 1974.

---

Will Ed Smith, Smith & Harrington, Eastman, Ga., for plaintiff.

Wallace Miller, Jr., Jones, Cork, Miller & Benton, Macon, Ga., for defendant.

### ORDER ON SECOND MOTION OF BRUNSWICK PULP & PAPER COMPANY FOR SUMMARY JUDGMENT UPON CONTRACTUAL INDEMNITY COUNT

LAWRENCE, Chief Judge.

I

This is an action by Southern Railway Company to recover from Brunswick Pulp & Paper Company all or part of a settlement made by the Railroad with an injured employee. It amounted to $250,000 plus lifetime responsibility for medical and hospital care.[1] The settlement was formalized by a consent judgment entered in 1972 against Southern Railway in an FELA suit brought in the Superior Court of Bibb County, Georgia. The injury occurred in May, 1971.

The present action is brought in three counts, implied indemnity, express indemnity and contribution. Count I proceeded on the theory of implied indemnity growing out of a negligent tort in which the fault of Brunswick Pulp is claimed to have been active as contrasted with the merely passive negligence of Southern. The second count is based on

---

1. The employee, a freight conductor, was paralyzed from his chest down when he fell and broke his back while attempting to dislodge a log protruding from a pulpwood car at a point near Lumber City, Georgia, on a mainline of Southern Railway.

express or contractual indemnity. Count III was predicated on contribution.

In an Order dated January 4, 1974, I granted defendants' motion for summary judgment as respects Counts I and III. Since there was a voluntary settlement and not an involuntary judgment, under Georgia law existing at the time of the injury, no action could be maintained for implied indemnity or contribution without "the force of a legal judgment".[2]

## II

Count II is based on contractual indemnity. In it Southern seeks recovery under the clause of a sidetrack agreement in which the Railroad agreed to construct and operate a spur track and facilities for receipt of freight from Brunswick Pulp. The agreement provides: "Industry will indemnify and save harmless Railroad, and any associated, controlled, or affiliated association, from and against all damage resulting from negligence of Industry or the servants or employees of Industry, in and about said industrial track and the right-of-way therefor".

█ In my Order of January 4th I ruled that the quoted language covers the loss resulting from an injury to a freight conductor of Southern occurring on the main line (many miles from the loading site) as the alleged result of negligence by Brunswick Pulp in loading the pulp car at the spur track.[3] This Court further held that, under Georgia law, the right to indemnity exists where there is a reasonable, good faith settlement between the indemnitee and an injured employee. See Robert & Company Associates et al. v. Pinkerton & Laws Company et al., 120 Ga.App. 29, 33f, 169 S.E.2d 360; Union Camp Corporation v. Louisville & Nashville Railroad Company et al., 130 Ga.App. 113, 202 S.E.2d 508.

## III

Subsequently, Brunswick Pulp moved that the judgment of this Court as to Count II be amended pursuant to Rule 58. Defendant complained that the effect of the ruling "is to permit indemnification by Brunswick Pulp & Paper for the negligence of the Railroad, which is contrary to the established law of Georgia".

That question had not been previously raised. The Court suggested to defendant's counsel that the better way to raise it would be to amend the answer to Count II by specifically pleading the defense and then moving for summary judgment. This was done and since then oral argument has been had and briefs filed dealing with the issue of whether Southern is entitled to be indemnified for its own negligence.

2. See: Ga.Laws, 1972, pp. 132–133, 134; Ga.Code Ann. §§ 20–1206, 105–2012(1); Ross & Co. v. White, 224 Ga. 324, 161 S.E.2d 857; Lewis Card & Company v. Liberty Mutual Insurance Company et al., 127 Ga.App. 441, 443, 193 S.E.2d 856; Central of Georgia Railway Co. v. Southern Clays, Inc. et al., 94 Ga.App. 377, 380, 94 S.E.2d 625; Southern Nitrogen Co. v. Stevens Shipping Co., 114 Ga.App. 581, 151 S.E.2d 916; Thornhill v. Bullock, 118 Ga.App. 186, 162 S.E.2d 886; Hangar Cab Company, Inc. v. City of Atlanta et al., 122 Ga.App. 661, 178 S.E.2d 292; Hospital Authority of Emanuel County v. Gray, 123 Ga.App. 415, 181 S.E.2d 299; Atlanta Milling Company v. Norris Grain Company, 271 F.2d 453 (5th Cir.); Reynolds v. Southern Railway Company, D.C., 320 F. Supp. 1141, 1144, 1145; United States Lines, Inc. v. United States, 470 F.2d 487 (5th Cir.); Advanced Refrigeration v. United Motors Service, 69 Ga.App. 783, 26 S.E.2d 789.

3. See in this connection Huck v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 5 Wis. 2d 124, 92 N.W.2d 349. In its Order of January 4th this Court stated: "I have concluded that the sensible and proper construction of the indemnity clause here is that the obligation to indemnify is effective as to damage resulting beyond the industrial track if the causal act of negligence took place "in and about" the spur. The cardinal rule of construction is, as stated, the intention of the parties. I hardly think Southern would intend to limit its indemnification to such damage as occurred in and about the industrial track when negligence of the industry in loading pulpwood could result in heavy loss or injury elsewhere on the system."

I will first consider the existence and extent of the Railroad's negligence as to which the indemnitor (Brunswick Pulp) contends that Southern cannot absolve or indemnify itself by contract.

Clearly, the Railroad thought that it was liable to the employee, Robert L. Elder, under the Federal Employers' Liability Act. While Southern contended that it was only passively at fault and that the active cause of the injury was the negligence of Brunswick Pulp in loading the rack car, it acknowledged by its conduct that it was concurrently negligent in respect to causing the injury. It agreed to a settlement and consummated same by means of a consent judgment in the Superior Court of Bibb County. The complaint filed by the conductor was prepared in collaboration with the Railroad. It contained allegations that the proximate cause of the injury was the negligence of Southern and that the accident was due to the failure to furnish its employee with a reasonably safe place to work.

In the brief of plaintiff presented in this case at the time defendant's original motion for summary judgment was before me, the consent judgment was described by counsel as a "solemn judgment of Bibb Superior Court". Southern contended that the judgment was "voluntary" only to the extent that "a person shells out his money to one who is pointing a pistol as his head . . .."

### IV

█ Under the indemnity clause, Southern Railway is entitled to be indemnified for "all damage" resulting from the negligence of Brunswick Pulp. But what if the negligence of the indemnitee itself combined with that of the indemnitor to cause the injury that resulted in the claim by Mr. Elder and the consequent settlement? Under a 1970 act of the General Assembly of Georgia, an indemnity contract connected with the construction, alteration, repair,

maintenance, demolition or moving of a "building structure" is void as against public policy where it purports to indemnify or hold harmless the promisee against liability for damage or injury caused by or resulting from "the sole negligence" of the indemnitee. Ga. Laws 1970, p. 441; Ga.Code Ann. § 20–504. The instant case is not affected by the 1970 legislation since the contract here does not provide for indemnity if the damage or injury resulted *solely* from the negligence of Southern Railway.[4]

█ "[A] contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." See 41 Am.Jur. 2d Indemnity § 15. The Courts of Georgia adhere to the general rule. Where an agreement does not show plainly and specifically that it was intended to indemnify the indemnitee for his own negligence, he cannot recover thereunder if his own negligence caused the loss. Massee & Felton Lumber Company v. Georgia & Florida Railway, 143 Ga. 173, 84 S.E. 468; Batson-Cook Company v. Georgia Marble Setting Company, 112 Ga.App. 226, 144 S.E.2d 547. One who seeks to absolve himself from the consequences of his own negligence may contract to do so in unequivocal terms. Such a result will not be read into the contract by implication. Bohannon v. Southern Railway Co., 97 Ga.App. 849, 855, 104 S.E.2d 603; Searboro Enterprises, Inc. et al. v. Hirsh, 119 Ga.App. 866, 870, 169 S.E.2d 182; Peacock Construction Company v. Montgomery Elevator Company et al., 121 Ga.App. 711, 175 S.E.2d 116; Benson Paint Company v. Williams Construction Company, 128 Ga.App. 47, 49, 195 S.E.2d 671.

█ Only one Georgia case has come to my attention where it is held that an indemnity agreement containing no ex-

---

4. Further, it does not appear that a spur track constituted, under the statute, a contract relative to construction of "a building structure".

plicit inclusion of indemnitee's negligence demonstrated a clear intent to require indemnification for loss caused by the indemnitee's own negligence. In Robert & Company Associates et al. v. Pinkerton & Laws Company et al., *supra*, 120 Ga.App. 29, 169 S.E.2d 360, the Court of Appeals said that the "all-inclusive" language admitted no doubt that Robert & Company was to be indemnified for its own negligence.[5] The indemnity agreement between Southern and Brunswick Pulp bears much more resemblance to those construed in *Massee* and in *Batson-Cook, supra*. At any rate, under the authorities cited, it is settled that Southern's own negligence cannot constitute the basis for indemnification if it constituted *the* proximate cause of the injury.

## V

But what if Southern Railway and Brunswick Pulp were both negligent?[6] *Massee* and *Batson-Cook* are of little help since the pleadings and the record in those cases disclose that the indemnitee was *solely* negligent. There may be an issue of fact in the present case as to whether Southern's negligence was the sole cause of the injury or whether there was concurrent fault by Brunswick Pulp. It is true that in Elder's suit in the Bibb Superior Court, formalizing the settlement by consent judgment, the complaint alleged that the Railroad's negligence was the proximate cause of Elder's injury. Such a judgment did not conclusively adjudicate that issue as far as Brunswick Pulp was concerned.[7]

I conclude that the grant of summary judgment to defendant on the theory of Southern's admitted negligence is precluded by the decisions in Benson Paint Company v. Williams Construction Company, *supra*, 128 Ga.App. 47, 195 S.E.2d 671, and Peacock Construction Company v. Montgomery Elevator Company, *supra*, 121 Ga.App. 711, 175 S.E.2d 116. In *Benson* the plaintiff, an employee of a subcontractor, was injured while working at a construction project. He sued the general contractor (Williams) for negligence in breaching the duty to keep the premises clean. Defendant impleaded the subcontractor under a contract in which the latter agreed to indemnify the general contractor from liability or claims arising out of negligence by the subcontractor in the performance of the work. The Court of Appeals held that the agreement clearly did not indemnify the general contractor for his own acts of negligence. The Court found that there was evidence that the negligence of the indemnitor *and* indemnitee "combined" to cause the injury. "In such a case," said the Court of Appeals, "the defendant would be entitled to indemnity from the third-party defendant under the express terms of the contract."

A like result under similar circumstances was reached in Peacock Construction Company v. Montgomery Elevator Company, *supra*. The grant of summary judgment to the third-party defendants was there reversed by the Court of Appeals and the case sent back for trial. It was impossible from the record to determine, as a matter of law, what negligence was the proximate cause of the injury and whether it was

---

5. Recently, this much litigated case has been back in the Court of Appeals. See Pinkerton & Laws Co. v. Robert & Company Associates et al., 129 Ga.App. 881, 201 S.E.2d 654. The Court upheld an award of damages to Robert & Company as indemnitee. Certiorari has been granted but evidently on another point.

6. Frequently sidetrack agreements provide that if liability should arise from the joint or concurring negligence of both parties, the loss shall be borne by them equally.

7. Such a judgment "merely" represents "a conclusive determination" that the indemnitee was *negligent in some manner alleged*. Peacock Construction Company v. Montgomery Elevator Company, *supra*, 121 Ga.App. 712–713, 175 S.E.2d 116. In the brief of Brunswick Pulp it is stated that, "to say the least", Southern "is estopped to contend that its own negligence, if not *the* proximate cause, was *a* proximate cause."

attributable jointly to the indemnitee and indemnitor or to "a combination of the negative conduct of [the former] and the positive conduct [of the latter]".

These decisions require denial of Brunswick's motion for summary judgment which is based on the theory of the existence of negligence by Southern Railway. However, the important question remains of where the parties stand as to the effect of indemnitee's negligence on its recovery if the fault of both proximately caused the injury or loss. The Court of Appeals left that problem unresolved.

## VI

Some time ago I suggested to counsel that the doctrine of comparative negligence might be utilized under the circumstances of this case. The statute and decisional law of this State recognizes that principle only in the case of negligent tort where both parties are at fault. Ga.Code Ann. §§ 94–703, 105–603.[8] This Court is aware of only one case in which the comparative negligence concept has been applied to contractual indemnity where there is no controlling statute.[9] See United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224. That case involved a similar situation: negligence by both the indemnitee (United States) and the indemnitor-contractor (Seckinger) that contributed to the injury to an employee of the latter. The "Responsibility" clause did not expressly provide for indemnity to the Government for a loss resulting in part from its own acts or omissions. It only stated that the contractor would be responsible for all damages to person or property occurring as a result of his fault or negligence in the prosecution of the work. Federal common law controlled the interpretation of the indemnity agreement.

The Supreme Court said that the principle is "accepted with virtual unanimity among American jurisdictions" that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." However, under the terms of the agreement, Seckinger was "clearly liable for its negligence" although its liability did not "encompass the Government's as well". Considering all the factors involved, the Supreme Court concluded that the most reasonable construction of the clause was found in the alternative argument of the United States that "liability be premised on the basis of comparative negligence". Seckinger would "be required to indemnify the United States to the full extent that its negligence, if any, contributed to the injuries to the employee" but would not be required to indemnify the United States for its own negligence. 397 U.S. 215–216.[10]

Is that doctrine applicable in Georgia where both parties are at fault and one has agreed to indemnify the other for *all* damage resulting from the indemnitor's negligence? This is an area uncharted and untrod by Georgia courts. There are hints in two decisions that comparative negligence is appropriate in the case of maintenance of a nuisance created by placing an object where it is dangerous to pedestrians and a case where there was negligent misrepresentation by defendant as to the safety of performing

8. For the evolution and statutory development of comparative negligence in this State see Mason W. Stephenson, "Plaintiff's Last Clear Chance and Comparative Negligence in Georgia", 6 Georgia State Bar Journal (August, 1969), 47.

9. In Arkansas apportionment is permitted under indemnity clauses such as the one involved in the present case. See Missouri Pacific Railroad Company v. Arkansas Oak Flooring Company, 434 F.2d 575, 580 (8th Cir.). Apparently the rule in that State is based on the extension of a contribution statute that provides for consideration of relative degrees of fault where they are disproportionate. C & L Rural Electric Cooperative Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337.

10. For an analysis and critique of *Seckinger* see "A New Liability for Government Contractors" in 24 Southwestern Law Journal (Dec., 1970), 852–860.

certain work. See Floyd v. City of Albany, 105 Ga.App. 31, 123 S.E.2d 446, and Seagraves v. ABCO Manufacturing Company, 118 Ga.App. 414, 164 S.E.2d 242. A commentator has recently suggested that in contribution and implied indemnity the doctrine of comparative negligence would be applicable in Georgia.[11] A federal district court has characterized an admiralty case in which no personal injury or collision was involved as presenting "a classic situation for the application of the doctrine of comparative negligence". See Houston-New Orleans, Inc. v. Page Engineering Company, D.C., 353 F.Supp. 890, 900. See comment in The forum, (A.B.A.), IX, (1973), 441–442.

We have seen that in *Benson* and in *Peacock, supra,* it was held that when negligence of both parties combines to cause an injury, the indemnitee is entitled to indemnity under an agreement such as the one now before this Court.[12] The trouble is that the Court of Appeals did not instruct the parties as to further procedure in the trial court. Nor does the law of Georgia.

▬ I have concluded that the comparative negligence concept should be borrowed from tort law and applied in this case. It represents the most effective and the fairest method of implementing the holdings of the Court of Appeals referred to above. To so rule does not amount to judicial legislation in a diversity case by a federal court.[13] Since there is no State law to follow, improvisation is inevitable.

▬ All this Court can do is estimate how the appellate courts of Georgia would decide this case. Wright, The Law of Federal Courts (1970), p. 240;

1A Moore's Federal Practice § 0.309 [2]. Where the state appellate courts have not ruled as to the law on a particular point, there is but one course to pursue. "This Court sitting as a diversity court is . . . compelled to make an *Erie*-mandated guess as to what the Georgia courts would hold if the question were before them." Powell v. Lititz Mutual Insurance Company, 419 F.2d 62, 65–66 (5th Cir.). In adopting the comparative negligence concept in this case, I take the route I imagine that the courts of Georgia would follow if they were at the same fork of the roads at which this Court finds itself.

I will add that counsel do not appear to disagree with this solution. They differ only as to the particular version of the comparative negligence doctrine to be applied.

### VII

Applying the comparative negligence doctrine to contractual indemnity creates, however, its own special problems. The Georgia version denies any recovery if plaintiff's negligence equals or exceeds defendant's. Damages are proportionately reduced where the latter's fault exceeds that of the plaintiff. Thus, if each party is 50% at fault, there can be no recovery. But should plaintiff's negligence be 49%, he is entitled to recover 51% of his damages. See Georgia Railway & Power Co. v. Belote, 20 Ga.App. 454, 93 S.E. 62; Southern Railway Company v. Neely, 284 F.2d 633 (5th Cir.); Southern Railway Company v. Campbell, 309 F.2d 569 (5th Cir.); Cf. McDonald v. Vaughan, 115 Ga.App. 544, 154 S.E.2d 871.

▬ Does the "equal to or greater than" limitation as to plaintiff's recov-

---

11. William G. Boyd, "Distribution of Judgment Among Tortfeasors—An Approach of Fairness Among the Parties", 24 Mercer Law Review (1973), 697, 701–702.

12. If the loss had resulted from a breach of contract which is indemnified against by the indemnitor, a full recovery would be permitted. Union Camp Corporation v. Louisville & Nashville Railroad Company et al., *supra,* 130 Ga.App. 113, 177, 202 S.E.2d 508. But

no breach of express contract appears to be involved in this litigation.

13. The highest Courts of New York and Illinois have declined to abolish the contributory negligence rule and substitute comparative negligence, stating that such a farreaching change is more appropriate for legislative action. See Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622; Maki v. Frelk, 40 Ill.2d 193, 239 N.E.2d 445.

ery apply to contractual indemnity where indemnitor and indemnitee are both at fault? The agreement between Southern and Brunswick Pulp says nothing about limiting the recovery by indemnitee to cases where its negligence is smaller than that of the indemnitor. What the contract provides is that Brunswick shall indemnify the Railroad for "all damages resulting from negligence of Industry, in and about said industrial track". Where negligent acts by both parties constitutes the proximate cause of the loss, denial of any recovery at all because indemnitee's fault equalled or exceeded the indemnitor's comes close to judicial impairment of contractual rights. Such an interpretation of the language amounts to a re-writing of the contract by the court. Should both Southern and Brunswick be found at fault, the most equitable solution as far as indemnity is concerned seems to me to permit recovery in the proportion Brunswick's negligence bears to the combined negligence of the two parties.

The comparative negligence rule as applied in some state jurisdictions and under F.E.L.A. and in maritime torts reduces a recovery in proportion to the relative fault of the parties and a plaintiff is entitled to recover proportionately although his own negligence may considerably outweigh the defendant's. Such an approach seems more consistent with the intent and spirit of the indemnity agreement than the comparative negligence formula as it is applied to tort actions under Georgia law.

In fashioning a remedy in this case, I have decided to apply the "pure" or "straight" form of comparative negligence, as illustrated by the formula used in F.E.L.A. and in maritime tort cases, rather than the Georgia version under which plaintiff's negligence must not exceed a 49% threshold.[14]

## VIII

Interrogatories will be submitted to the jury for findings by it as to questions of negligence, proximate cause, and, if both parties were negligent, as to the respective percentages of such fault.[15]

Another question submitted will relate to the reasonableness of the settlement and the existence of probable basis of Southern's legal liability to its injured employee. The rule is that the Railroad must show by a preponderance of evidence that "the amounts paid in settlement of the actions were reasonable and not in excess of what the claimants could have reasonably expected to obtain, under the facts and applicable law, had the cases been allowed to proceed to verdict and judgment". Robert & Company Associates v. Pinkerton & Laws Company, 120 Ga.App. at 33–34, 169 S.E.2d at 364. In its 1973 decision in that litigation (see note 5 herein) the Court of Appeals said that "What was required to entitle Robert & Company to recover under indemnity was that it be 'defending actions having a probable basis on which to establish legal liability'." Expert testimony is admissible as to such matters. Union Camp Corporation v. Louisville & Nashville Railroad Company, *supra*, 130 Ga.App. at 115–116, 202 S.E.2d 508.

## IX

The ramifications of the comparative negligence rule as applied to indemnity actions seemingly have no end. Could

---

14. For the operation of the "pure" and the "modified" rule see 57 Am.Jur.2d § 443, n. 13; 32 A.L.R.3d 463, 473, § 6; 38 Albany Law Review (1973) 24–25; 56 American Bar Ass'n J. (Feb., 1969), 127–128; "Comparative Negligence. An Exercise in Applied Justice," 5 St. Mary's Law J. (Winter, 1973–74), 657–659.

15. The legal distinction between active and passive negligence will not be given effect in this case. "[I]n the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate". Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed.2d 491; 42 C.J.S. Indemnity § 12.

Southern have avoided the injury if it and its employees (including Elder) had exercised ordinary care after the negligence of Brunswick was, or should have been, apparent? Did the Railroad have "the last clear chance" to avoid the injury? Counsel for the indemnitor requests that specific interrogatories be addressed to those subjects in the special verdict.

 It has been held that the last clear chance rule in F.E.L.A. cases vanishes into the principle of comparative negligence and apportionment of damages and is obsolete. Seaboard Coast Line Railroad Company v. Daugherty, 118 Ga.App. 518, 521–523, 164 S.E.2d 269, cert. den. 397 U.S. 939, 90 S.Ct. 950, 25 L.Ed.2d 120. *Cf.* Atlantic Coast Line Railroad Company v. Anderson, 267 F.2d 329 (5th Cir.). Under the federal Act, contributory negligence does not exempt a railroad from liability where the employee selects an unsafe rather than a safe route. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. However, we are not trying Elder's claim against the Railroad. We are trying Southern's action for indemnity growing out of that claim. In such a case the defense of last clear chance may, as such, be inappropriate. But its rationale—its substance as distinguished from the label—is germane. The doctrine in question can be relevant in respect to proximate cause as well as the degree of negligence by Southern. It and the related rule of "avoidance of consequences" are inescapable considerations in determining whether the injury was caused solely by Southern's negligence or whether the Railroad's fault combined with negligence of Brunswick to form the proximate cause of the accident.

 The failure of Elder to exercise ordinary care to avoid the injury after he was aware of any original negligence of the indemnitor could constitute a new, independent and intervening cause.

Here Georgia law governs as to causation. The rule is that "if, subsequently to an original . . . negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote". Southern Railway Company v. Webb, 116 Ga. 152, 42 S.E. 395. If both plaintiff and defendant are negligent, the latter can be found solely liable for *all* the damage if he had a last clear chance to avoid the injury and did not exercise ordinary care. See Grayson v. Yarbrough, 103 Ga.App. 243, 119 S. E.2d 41. On the other hand, "if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken. . . ." Southern Railway Company v. Webb, *supra*.

The jury will be appropriately instructed as to all of this. I am hesitant to submit specific interrogatories as to the two defenses, believing that it may merely complicate what is already complex enough. At any rate, I have decided not to tie this Court's hands three months in advance of trial by any hard and fast ruling on that subject. There is time enough to deal with this problem.

A Pandora's Box may have been opened by me in applying and accommodating the comparative negligence concept to an action for contractual indemnity. "Hope", however, was left at the bottom of the mythological box. There is at least the possibility that between now and the trial the State courts will have enlightened us. To that extent the rulings herein are not definitive. Should light chance to shine where there is now only darkness or doubt, the conclusions reached will be modified accordingly.